## Bourbon County Board of Education et al. v. Darnaby.

December 15, 1950.

Rehearing Denied January 18, 1951.

W. B. Ardery, Judge.

Bradley & Blanton for appellants.

W. Owen Keller for appellee.

JUDGE LATIMER—Affirming.

The members of the Bourbon County Board of Education filed charges against E. H. Darnaby, Superintendent of the Bourbon County Schools. The Board, after hearing the evidence, which consisted largely of testimony of members of the Board, entered an order discharging and removing the Superintendent and declaring the office vacant. The Superintendent then instituted this action in the Bourbon Circuit Court praying that the order of the County Board be adjudged invalid and void and that the defendant Board members and L. C. Taylor, acting Superintendent, be enjoined and directed to disregard the order; that they be further enjoined from interfering with plaintiff, Darnaby, in the performance of his duties as Superintendent; that the Board be directed to pay the plaintiff his salary at all times since March 18, 1950; and that the injunction be made permanent.

The cause was heard on the evidence produced before the Board of Education. The court adjudged that the Board exceeded its authority in removing the Superintendent and directed his reinstatement and payment of back salary. From that judgment this appeal is prosecuted.

Six charges were listed against the Superintendent, upon which the Board entered its order of dismissal and removal. They are:

(1) On numerous occasions Mr. Darnaby purchased supplies and made contracts without the authorization of the Board.

(2) He wrote a letter to the State Department of Public Instruction containing a number of false statements with reference to Board Member George Wyatt.

(3) As secretary of the Board, he made false entries in the minutes, and in reading them to the Board for approval, did not read what actually appeared on the minutes.

(4) He paid bus drivers without checking their mileage, causing a loss to the taxpayers.

(5) He attempted to dominate the Board and threatened reprisal to the daughter of Board Member Shropshire because Shropshire failed to vote as Mr. Darnaby desired.

(6) He threatened a principal with reprisal unless he influenced Board Member Wyatt to resign from the Board.

The court below apparently considered the evidence carefully and has incorporated a careful and pointed opinion in the judgment. We think it to be a proper and correct answer to this salmagundi of charges. We are, therefore, adopting it chiefly as our opinion.

"On this Appeal the record discloses that on January 19, 1948, the County Board of Education re-employed E. H. Darnaby for a four-year term as County Superintendent of Schools. During the summer of 1949 charges were brought against one of the Board members, Mr. Wyatt, by patrons of the Ruddles Mills School, seeking his removal from office. The cause was heard, or at least acted on, by the State Board at Frankfort, and Mr. Wyatt was acquitted by that body. On March 16, the Board began a hearing on the several charges the Board had preferred against Mr. Darnaby. During that day and the following day the Board members testified against Darnaby on the charges they themselves had preferred. On March 17 the Board broke Mr. Darnaby's contract of employment and discharged him. Mr. L. C. Taylor was named acting Superintendent by the Board a day later. The whole proceeding now comes before this Court on Mr. Darnaby's appeal from the action of the Board.

"Briefly stated, the charges brought by the Board against Mr. Darnaby were as follows:

"That Mr. Darnaby awarded contracts for supplies and construction, without the order or approval of the Board; specifically, he awarded a contract for a furnace;

that he bought a school bus; that he bought a steam jenny; that he bought a bathroom for the Center Hill school; that he paid a water-bill to the City of Paris, before the bill was properly investigated.

"That he made false charges against Board Member Wyatt, while Wyatt was being tried by the State Board at Frankfort, by writing a letter to the State Superintendent, and that the charges were made maliciously.

"That he falsified the minutes of the Board, and did not read to the members the false statement he had inserted.

"That he overpaid a bus driver $500.

"That he attempted to completely dominate the actions of the Board by threatening reprisals against Mr. Shropshire's daughter, who is teaching in the Bourbon schools.

"That he threatened Mr. Ritchey, unless he would influence Mr. Wyatt to resign.

"On this appeal there is but a single question for the Court to determine,—whether the evidence contained in the record is sufficient to show legal cause for the Board to break Mr. Darnaby's contract of employment and deprive him of his office as Superintendent of the Bourbon County schools.

"The first charge is that Mr. Darnaby awarded contracts without the order or approval of the Board. The evidence discloses that the present Board members, who brought the charges against Mr. Darnaby, testified that they believed they had awarded the contract to Mr. Pennington for the furnace for the sum of $797.50. The official minutes, approved and signed by the Board, shows the contract was not awarded, but that Mr. Merringer's bid of $508 be investigated to see whether the Merringer bid covered and proposed to give the same materials, supplies and service as the Pennington bid. Mr. Darnaby testified that the contract was not awarded to Pennington, and the Board agreed to give the contract to the lowest and best bidder, if both bidders followed the same specifications agreed on by the Board. The contract was awarded to Mr. Merringer on the same specifications as Mr. Pennington's bid covered, and the award

424

appearing in the official minutes of the Board was approved, signed and paid for by the Board. If it was Mr. Darnaby who saved the County School Fund $280 on a $508 contract, then it appears to the Court that it is not such a charge as would be legal cause for Mr. Darnaby's dismissal.

"The purchase of the bus by Mr. Darnaby as charged by the Board was approved, paid for by the Board and used to convey children to the Ruddles Mills school. That also does not constitute legal cause for the dismissal of Mr. Darnaby by the Board.

"It appears from the evidence that Mr. Darnaby secured, on approval, without the order of the Board, a steam jenny, an instrument used in servicing automotive equipment, in this case, school buses. The Board did not accept jenny, or pay for her, or it. So far as the School Board and the County School Fund is concerned, jenny has not been approved, and the Board has no interest in her.

"As to the bathroom at Center Hill, Mr. Darnaby testified he did not know it was being built until Mr. Shropshire brought in some bills for it. Mr. Shropshire testified he knew it was being built, but he thought Mr. Shelton was building it. There is nothing in the record to show that Mr. Darnaby was in any way responsible for the building of the bathroom at Center Hill.

"Mr. Darnaby is accused of paying a $500 water bill to the City of Paris, before the payment was authorized. The bill was properly investigated, found to be correct and paid, in order to avoid discontinuance of the students' water supply. The bill was approved and paid by the Board.

"The letter written by Mr. Darnaby is cited as another legal cause for his removal. This letter, written to the State Superintendent of Public Instruction, shows no malice either in the words used in the letter, their fair import when judged without bias, or the intention of doing anything except guard the good name of the schools of Bourbon, without harm to any individual. The evidence in the record shows his official conduct bears out this same attitude, his attempt to guard the Ritcheys against unfavorable and unwelcome publicity, and shows this attitude just as definitely as it shows his disagree-

ment and disapproval of the circumstances and happenings that brought the charges, trial and acquittal of Mr. Wyatt. The acquittal by the State Board could not, and did not, change the events which led to the trial.

"The first paragraph of the Darnaby letter to the State Superintendent states he does not know whether the charges against Mr. Wyatt are true or false, but it also states that the charges have profoundly disturbed the well-being of the Bourbon County schools and the confidence of the patrons and public in them. The remainder of a long letter is taken up with Mr. Wyatt's dislike for him and conclusions about what Mr. Wyatt intends to do to him. In the light of later events, some of Mr. Darnaby's conclusions were well drawn, while most of the statements were of no consequence to anybody except the two men, who dislike each other. The letter also said Mr. Wyatt voted to hear the charges against Mrs. Ritchey, while the great weight of evidence shows he did not. In any event, the mistake of Mr. Darnaby about the vote of Mr. Wyatt certainly had no ill effect on Mr. Wyatt or Mrs. Ritchey, nor did this statement change in the least the sequence of events.

"In the last paragraph of the letter, Mr. Darnaby states frankly, albeit with some circumlocution, that in his opinion, Mr. Wyatt should resign, or be thrown out of office. Mr. Darnaby had a right to his opinion, as well as the right to express it. He was in a position to know more about what was going on in the schools than any other one person.

"As stated, it appears from the record that the recording of Mr. Wyatt's vote on the subject of Mrs. Ritchey was a harmless error, which resulted in no harm to any of the parties involved. There is no evidence, only an intimation, that the error was a wilful and malicious forgery.

"As to the charge that Mr. Darnaby overpaid a bus driver $500, the evidence is that the Board overpaid the driver, and that Mr. Darnaby discovered the overpayment and gave the Board the information that enabled the Board to recover the overpayment.

"There is no evidence to show Mr. Darnaby attempted to dominate the Board. Mr. Shropshire said Mr. Darnaby threatened the position of his daughter as a

teacher. Mr. Darnaby denies he threatened Mr. Shropshire. The record tends to show that the two men were engaging in mutual recriminations about each having relatives on the School Board payrolls.

"The last charge is that Mr. Darnaby threatened Mr. Ritchey. The record discloses no such evidence. Mr. Darnaby went to see Mr. and Mrs. Ritchey in the attempt to persuade them, as close personal friends, to use their influence to secure Mr. Wyatt's resignation from the School Board. There is no evidence that Mr. Darnaby went to the Ritcheys for any other purpose than to protect the Ritcheys from unfavorable publicity and the schools from the breath of scandal.

"A number of cases have been cited which correctly state general principles of law. However, the case most nearly analogous to the case at bar is Smith v. Board of Education of Ludlow, Kentucky, 264 Ky. 150, 94 S. W. 2d 321.

"In the Ludlow case, Smith, the Superintendent, preferred charges against the Chairman and Members of the School Board for interference with the duties of the Superintendent. The charges were filed in the office of the State Superintendent at Frankfort. The Board members were acquitted, after a trial before the State Superintendent, but they were reprimanded. In the case before us, the charge filed against Mr. Wyatt was 'conduct unbecoming a Board member,' and the charge was brought by patrons of the Ruddles Mills school, and not the Superintendent. In this case, the State Board did not reprimand Mr. Wyatt for his alleged conduct with Mrs. Ritchey, in the presence of the pupils. After the Board members were acquitted by the State Board, they brought charges against their Superintendent, who had been given a contract of employment for four years, which term of employment had not expired, just as the facts are in the present case. Some of the charges in the Ludlow case are similar to the charges against Mr. Darnaby, and just as in the Darnaby case, the Board promptly found the Superintendent guilty and discharged him. The Court of Appeals found that 'neither the charges nor evidence were sufficient to remove appellant from his office.' In this same case the Court took cognizance of the fact that where malice has been put in issue, then

the Court must determine whether there is evidence of malice, and decide the question as it does all other issues.

"The following definition of 'cause' appearing in 22 R. C. L., page 571, has been adopted and approved by the Kentucky courts:

" 'The word "cause" in a statute authorizing the removal of officers for cause means legal cause, and not any cause which the Board authorized to make such removal may deem sufficient. It is implied that they cannot be removed at the mere will of those vested with power of removal, or without any cause. It must be a cause relating to, and affecting, the administration of the office, and must be restricted to something of a substantial nature directly affecting the rights and interests of the public.'

"In passing on the right of the Board to break the Superintendent's contract of employment and discharge him from office, the Court, in the Ludlow case, used the following words:

" 'We are not unmindful of the rule that school boards are given a reasonably wide discretion in removing teachers and other employees, when any legal cause is charged, and supported by evidence of a substantial nature. But this does not mean that such boards may rescind their contracts and discharge such employees for some fanciful or imaginary cause, to suit their own ideas. If such had been the intention of the Legislature, evidently it would have provided for their removal at will, or without cause, instead of "for cause." ' '

"There is no evidence in the record that Mr. L. C. Taylor, named a defendant in this appeal, had any part in bringing on this controversy, and that he merely discharged faithfully the duties assigned to him by his immediate superiors, without criticism from any of the parties involved in this action.

"Now, this appeal having been submitted for judgment on the charges brought by the Bourbon County Board of Education, and on the evidence heard by the said Board, in support of the said charges, the evidence on behalf of E. H. Darnaby, the several exhibits, the petition of appeal and the briefs of the parties, and the Court being advised, adjudges as follows:

"1st. The evidence contained in the record does **not** show legal cause for the removal by the Bourbon County Board of Education of E. H. Darnaby as Superintendent of Bourbon County Schools.

"2nd. That the Bourbon County Board of Education was in error when it removed E. H. Darnaby as Superintendent of Schools, on the evidence heard before the Board.

"3rd. That the order of the Bourbon County Board of Education, discharging E. H. Darnaby as Superintendent of Schools, is invalid and void.

"4th. That E. H. Darnaby is now the lawful Superintendent of Bourbon County Schools, and the only such Superintendent.

"It is ordered that the defendants, and each of them, be and are now enjoined from interfering with the said E. H. Darnaby in the performance of his duties as Superintendent of the Public Schools of Bourbon County.

"It is further ordered that the Bourbon County Board of Education pay to the said E. H. Darnaby, as Superintendent, his accumulated salary from March 18, 1950, to the date of the entry of this judgment.

"To all of which the defendants object, except and pray an appeal to the Court of Appeals, which is granted. This ——— day of ———, 1950. ·

"W. B. Ardery.
"Judge Bourbon Circuit Court"

Appellants maintain and insist that to permit the judgment to stand would in fact be allowing a substitution of the court's judgment for that of the Board. In support of their position, Hunter v. Board of Education, 265 Ky. 162, 96 S. W. 2d 265, and Starns v. Bourbon County Board of Education, 280 Ky. 747, 134 S. W. 2d 643, are cited. We, by no means, disagree with those decisions. The rules therein are not at all inconsistent with principles enunciated in Smith v. Board of Education of Ludlow, Kentucky, cited and relied upon by the lower court in its opinion above. The question goes to whether or not "good cause or legal cause," which must be the basis of removal, is present.

We think the judgment and opinion of the lower

court to be correct and that it properly resolved the matter.

The judgment is affirmed.