Michael **MARTIN**, Appellant

v.

David **OSBORNE**, Daviess County Jailer, in Both his Individual and Official Capacities; and Daviess County, Kentucky, Appellees.

No. 2005–CA–002363–MR.

Court of Appeals of Kentucky.

Oct. 26, 2007.

Michael T. Lee, Owensboro, KY, for Appellant.

Marvin P. Nunley, Owensboro, KY, For Appellees.

Before DIXON and VANMETER, Judges; GRAVES,[1] Senior Judge.

## OPINION

VANMETER, Judge.

Michael Martin appeals from a judgment entered by the Daviess Circuit Court after a jury found for appellee David Os-

borne in Martin's action seeking damages for wrongful termination. We affirm.

Martin began working as a deputy jailer at the Daviess County Detention Center in October 1986. He had achieved the rank of captain by the time Osborne became the jailer in January 2003 after winning a contested election.

In December 2002, prior to taking office, Osborne received a phone call from a woman who claimed that while she was an inmate, she and Martin repeatedly engaged in sexual activities in the detention facility. Osborne referred the matter to the Kentucky State Police for investigation and, after taking office, he asked another jail employee to monitor Martin's actions. That employee observed no inappropriate behavior, and no criminal charges were filed. Meanwhile, without mentioning the allegations, Osborne asked Martin to remain in his current position.

In February 2003, another woman claimed to Osborne that she and Martin had engaged in sexual activities while she was an inmate.[2] Osborne conducted an internal investigation, and he interviewed Martin on February 15 after advising him of the allegations and his *Miranda* rights. Martin was suspended from his duties on February 16, and he was terminated from his employment on March 14. During the subsequent grievance proceedings, Osborne provided Martin's attorney with a letter describing the basis for the termination, including a detailed description of the allegations of sexual misconduct. Further, Osborne described his investigative interview with Martin as follows:

---

1. Senior Judge John W. Graves, sitting as Special Judge by assignment of the Chief Justice pursuant to Section 110(5)(b) of the Kentucky Constitution and Kentucky Revised Statutes (KRS) 21.580.

2. At trial, the witness recanted her claims of sexual activity but not her claims that she and Martin spent time alone.

February 15, 2003, 20:50 hours: A taped interview with Mike Martin began with Martin being informed of his Miranda Rights and being told that we were conducting a criminal investigation. Martin did in fact admit that he did take Inmate [C.H.] to the Youth Alternative Building. Martin said he had took [C.H.] alone to the building, that is currently not in use by the facility other than to store a few items, so that she could straighten uniforms in a closet. This action is most certainly a violation of the Code of Ethics. Even a rookie deputy jailer would have known better than to place himself in a situation in which he would be totally alone in a large building with an inmate of the opposite sex and then to take the female inmate into a closet of the unoccupied building. Also, no documentation can be found where Martin notified radio of this inmate being moved from a secure location to an unsecured location; an obvious breach of SOP. These actions are totally inept for an 18 to 19 year deputy with the rank of captain that is in command of all prisoner operations.

Martin also admitted going to the Cadillac Motel with [C.H.] earlier in the year. He said he just gave her a ride to get a car. Again, even though he says that nothing sexual happened it was totally unprofessional and unethical as well as a violation of the Code of Ethics to accompany this young female inmate to a motel. This was another violation of the Code of Ethics.

I also questioned Martin about his signing a document verifying that [C.H.] had completed the court required number of 40 hours on a project when in fact the inmate said she had only completed a small portion of the hours, possibly four. He answered something to the effect that he only knew that she did some of the hours. Once again this is not the conduct that one would expect of a veteran 19–year captain. This too is an additional violation of the code of ethics.

I have further learned from the Daviess County Detention Center clerk that is assigned to the Prisoner Commissary Program that Mike Martin gave his approval for [C.H.] to receive commissary items at no cost.

Furthermore, in addition to the above information, It [sic] has also come to my attention that a federal investigation into similar complaints concerning Martin has been pending since possible [sic] 1991. And that Martin worked for the Owensboro Police Department years ago and that similar issues arose prior to his de-employment there.

(Footnotes omitted.) Osborne upheld Martin's termination after concluding that there was "abundant proof" of multiple violations of the Daviess County Detention Center Code of Conduct. Martin then filed a circuit court claim alleging wrongful termination. After a trial, the jury found that the termination was neither without cause, nor in retribution for Martin's pre-election support of Osborne's opponent. This appeal followed.

Martin first contends that the trial court erred when applying the standard set forth in KRS 71.060(2) for terminating a deputy jailer's employment for cause, and by holding that the focus of the wrongful termination proceeding was Osborne's "state of mind." We disagree.

KRS 71.060(2) provides in pertinent part:

The jailer shall be responsible for the appointment and removal of jail personnel, and the jailer may dismiss his deputies at any time with cause.

"Cause" is not defined in KRS Chapter 71. However, in *Martin v. Corrections Cabinet,* 822 S.W.2d 858, 860 (Ky.1991), the

Kentucky Supreme Court paraphrased and reaffirmed the language of *Bourbon County Bd. of Educ. v. Darnaby*, 314 Ky. 419, 235 S.W.2d 66, 70 (1950), as holding that a public employee's dismissal for cause

> relating to, and affecting, the administration of the office, must be restricted to something of a substantial nature directly affecting the rights and interests of the public.

Here, as noted above, Osborne provided substantial reasons for terminating Martin's employment, including not only the allegations of sexual misconduct with inmates, but also Martin's own admissions of ethical misconduct. At a minimum, Martin admitted that on multiple occasions he was alone in unsupervised situations with female inmates, and that he committed numerous violations of standard operating procedures while with those inmates.

■ Moreover, our review of the videotaped pretrial discussion shows that contrary to Martin's assessment, the court concluded that the wrongful termination proceeding turned not on a determination of Osborne's "state of mind" but instead on whether, at the time of Martin's termination, the facts which Osborne believed were true provided sufficient cause for the termination. Certainly, either Martin's ethical misconduct or the alleged sexual misconduct, if believed, constituted substantial legal cause for his termination, as such conduct not only related to and affected the administration of his office, but also "directly affect[ed] the rights and interests of the public." *Martin*, 822 S.W.2d at 860. It follows that the trial court applied the proper standards, and that it did not err by submitting to the jury the issue of whether Osborne had sufficient cause to terminate Martin's employment.

Further, we are not persuaded by Martin's claim that he is entitled to relief because he was denied due process during the termination proceedings. Although he relies on *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), that case involved a school security guard who was summarily dismissed, with no predischarge opportunity to respond, after it was discovered that he had falsely stated on his job application that he had never been convicted of a felony. Finding that the plaintiff had a statutorily-conferred property right in continued employment, the Supreme Court concluded that due process entitled him to both a predischarge notice and opportunity to respond to the allegations, and a post-discharge opportunity for administrative review.

■ Here, Martin was afforded such opportunities when he was provided notice and the opportunity to be heard by Osborne prior to his paid suspension. Martin then was provided post-termination opportunities to seek relief through grievance and judicial proceedings. Thus, Martin was afforded the due process protections discussed in *Loudermill*. Moreover, there is no merit to Martin's assertion that he was denied due process when Osborne's letter referenced certain past allegations which were not discussed during his investigative interview, as Osborne indicated and it appears from the record that he never relied on those past allegations as a basis for terminating Martin's employment.

■ Finally, we are not persuaded by Martin's contention that the trial court erred by "admitting information regarding prior allegations against [him] from 1985 and 1990." Martin was the first to introduce evidence below of those allegations, through his introduction of Osborne's letter as his own Plaintiff's Exhibit 7. He cannot now complain that Osborne later testified that he knew no additional details

and that the allegations played no role in his termination decision. *See, e.g., Thomas v. Greenview Hosp., Inc.,* 127 S.W.3d 663, 671 (Ky.App.2004), *overruled on other grounds by Lanham v. Commonwealth,* 171 S.W.3d 14 (Ky.2005); *Dunaway v. Commonwealth,* 239 Ky. 166, 39 S.W.2d 242, 243 (1931).

The court's judgment is affirmed.

ALL CONCUR.