Penny MOORE, Plaintiff–Appellant,

v.

The BOARD OF EDUCATION OF THE JOHNSON CITY SCHOOLS; Dr. R. Mike Simmons, Superintendent of the Johnson City Schools, Defendants–Appellees.

No. 96–5700.

United States Court of Appeals, Sixth Circuit.

Argued Sept. 9, 1997.

Decided Jan. 21, 1998.

Charles Hampton White, Richard L. Colbert (argued and briefed), Rebecca Wells Demaree (briefed) Cornelius & Collins, Nashville, TN, for Plaintiff–Appellant.

Erickson Herrin (briefed), Earl R. Booze (argued and briefed), Herrin, Booze & Rambo, Johnson City, TN, for Defendants–Appellees.

Before: KENNEDY, GUY, and SILER, Circuit Judges.

## OPINION

SILER, Circuit Judge.

Plaintiff Penny Moore brought this action against the Board of Education of the Johnson City Schools ("Board"), and Dr. R. Mike Simmons, Superintendent (collectively, "Defendants"), under the Americans with Disabilities Act, 29 U.S.C. § 794(a); the Due Process Clause of the Fourteenth Amendment of the United States Constitution; and the Tennessee Teacher Tenure Act, Tenn.

Code Ann. §§ 49–5–503(2)(C) and 49–5–504. After a bench trial, the district court granted judgment in favor of the Defendants. For the reasons stated herein, we **AFFIRM**.

## I

Moore was employed by the Johnson City School System as a teacher's assistant for three years, then as an intern at Woodland Elementary School for ten months, then, in March 1992 as a replacement for another teacher at Woodland. Upon completion of this partial year, she was chosen to fill a regular second grade teacher's position at the school for the 1992–1993 school year. She was again hired for the 1993–1994 year in the same position. During this entire period she was evaluated positively by her supervisors. However, unknown to school personnel, Moore was experiencing personal difficulties during this time. These problems included the arrest of her husband, an alleged rape by her ex-husband, and the loss of custody of her children. She voluntarily entered a psychiatric facility in late November 1993. Instead of informing the school administrators of this decision, she told them that she needed to undergo a blood test. While driving herself to the facility, she was under the influence of alcohol and was involved in an automobile accident that was reported by local news stations.

Learning of the accident and Moore's psychiatric difficulties, Simmons suspended Moore with pay and requested that she provide medical documentation indicating her ability to continue to perform as a classroom teacher. Although she received this request, Moore did not respond. She remained a patient of the facility until January 5, 1994.

After her suspension, Simmons sent Moore a letter changing her suspension to one without pay and directing her to notify him of her willingness to cooperate with his investigation by submitting her medical records to him and undergoing an independent psychiatric evaluation regarding her ability to perform in the classroom. Bryan McCarty, a Tennessee Education Association staff attorney, responded to this letter. He wrote that Moore was ready to return to work at the earliest possible time; that she would submit

a letter from Dr. Janet Lewis, her physician, regarding her ability to function as a teacher; but that she was not required to submit her medical and psychiatric records and would not submit to an independent psychiatric evaluation. No letter from Dr. Lewis was ever produced.

On March 3, 1994, McCarty faxed a letter to Simmons requesting that Moore be reinstated. In response, Simmons sent to Moore a letter dated March 4, 1994, which stated that her contract would not be renewed for the 1994–1995 school year. In a second letter dated the same day, Simmons stated that he was initiating dismissal procedures against Moore for improper conduct, which stemmed from her drunk driving accident on November 22, 1993; for insubordination, by failing to provide the requested documentation concerning her psychiatric condition; and for abandonment of her teaching duties without leave. Moore was offered a hearing before Simmons on these charges. In a third letter, dated March 28, 1994, Simmons charged Moore with conduct unbecoming a member of the teaching profession.

A hearing was set for April 27, 1994, at which Simmons both presented evidence against Moore and presided over the hearing. McCarty had requested that Superintendent Simmons recuse himself because he would be needed as a witness, arguing that due process principles prohibit the same individual from serving as both a witness and presiding officer. Simmons disagreed and declined to step down as presiding officer.

At the hearing Moore and five other witnesses testified on her behalf. These included several teachers from the school and Dr. Kay Kuczinski, a licensed social worker, who testified that she had been treating Moore since August 1990 for depression, anxiety and panic attacks. She also testified that Moore had been prescribed several antidepressants, but did not reveal any of Dr. Lewis's psychiatric diagnoses or that Moore had a substance abuse problem.

Simmons issued his opinion on May 13, 1994, upholding his dismissal of Moore. According to Simmons, Moore was dismissed because of insubordination and improper conduct; the issue of abandonment of teaching duties was dropped. In the opinion, Simmons wrote:

> The school system has a legitimate need under circumstances that so warrant to review a teacher's ability to continue to function in the classroom. I have determined that the events of this case so warranted. The school system was not able to consider whether or not Ms. Moore was fit to return to the classroom due to the refusal of Ms. Moore to provide any information with which such a consideration could be made[.] This dismissal is upheld *unless* Ms. Moore agrees to provide previously requested information by the superintendent with which her ability to resume her teaching duties can be considered. It is noted that Ms. Moore states she was not under the impression that she was directed to submit this documentation. Therefore, this decision provides one additional opportunity to do so. (Emphasis in original).

Moore did not provide the requested information and instead filed suit in the United States District Court for the Eastern District of Tennessee. She alleged that the Defendants violated the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Due Process Clause of the United States Constitution. She later amended her complaint to include a count alleging violations of the Tennessee Teacher Tenure Act. This last allegation apparently arose due to her discovery that the Johnson City School Board had erroneously conferred tenure status upon her during its meeting of April 5, 1993.

The district court held a bench trial on all issues presented. Pertinent evidence at trial included proof by the Defendants that Moore was involved in narcotics use and had been arrested during the period after the hearing and before trial. The court found for the Defendants on all issues.

## II

### A

■ Section 504 of The Rehabilitation Act of 1973, through which the Americans with Disabilities Act is applied to the states

and localities receiving funds from the Federal Government, provides, in pertinent part:

No otherwise qualified individual with a disability in the United States ... shall solely by reason of his or her disability, be excluded from the participation in, or be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance[.]

29 U.S.C. § 794(a). Thus, this section requires that Moore prove four separate elements: first, that she is a disabled person under the Act; second, that she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of her disability; third, that the relevant program or activity receives federal financial assistance; fourth, and most importantly to the present matter, that she is otherwise qualified for participation in the program or activity. See Sandison v. Michigan High Sch. Athletic Assn., Inc., 64 F.3d 1026, 1030 (6th Cir.1995).

The district court found that the first three elements of the statute were satisfied by Moore at trial, but concluded that she had failed to prove that she was otherwise qualified to teach. The court stated:

The evidence establishes that, prior to November 22, 1993, she [Moore] was able to perform all of her professional duties and keep her emotional problems and chaotic personal life separated from her public life. However, Ms. Moore has not proved that she was able to resume her teaching duties after her release from the hospital on January 5, 1994, or at any time prior to the expiration of her 1993–4 contract year. In fact, before her hearing in April, she had had two additional hospitalizations. In the absence of a letter from Dr. Lewis or the report of an independent psychiatric examination, the Court is unable to find that she was "otherwise qualified."

█ This court reviews the district court's findings of fact for clear error and conclusions of law de novo. Duncan v. Coffee County, 69 F.3d 88, 92 (6th Cir.1995).

Moore is to be considered otherwise qualified if she can, with "reasonable accommodation," meet the "necessary requirements" of the program. Doherty v. Southern College of Optometry, 862 F.2d 570, 574–75 (6th Cir. 1988).[1]

The following evidence was presented at trial concerning Moore's ability to perform as a second grade teacher. She was arrested for public intoxication and disorderly conduct on May 25, 1994. She was admitted to the Detoxification Rehabilitation Institute in Knoxville, Tennessee in August and September 1994. She also admitted her drug use to her therapist in February 1995, who stated that, "in 1993 ... she [Moore] began experimenting with Demerol, opium and cocaine." Moreover, it was shown that Moore lost custody of her children after a psychologist determined that she was incapable of caring for them. On the other hand, Moore presented evidence of positive evaluations of her teaching ability before her initial voluntary commitment in November 1993. However, in view of the evidence of Moore's emotional, legal and psychological difficulties, the district court correctly determined that she was not otherwise qualified to teach.

**B**

█ Moore also alleges that the pre-termination hearing she was given violated her due process rights. In examining this claim, the district court relied on a particular line of due process cases. See Parratt v. Taylor, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); Sutton v. Cleveland Board of Education, 958 F.2d 1339 (6th Cir.1992); Vicory v. Walton, 721 F.2d 1062 (6th Cir.1983). The court interpreted those cases as holding "that a plaintiff claiming a deprivation of property without due process of law does not state a claim of constitutional magnitude unless he or she can show that there is no adequate remedy at state law." The court further found that there was "no reason to suppose she could not have appealed her case to a state court." Thus, given that adequate

---

1. The Circuit Courts of Appeal disagree as to who bears the burden of persuasion in section 504 cases. See Doherty, 862 F.2d at 573–74;

Sandison, 64 F.3d at 1030 n. 3. As this case does not require us to resolve this question, we will not address it.

state remedies were available, the court concluded that Moore received constitutionally adequate process before her dismissal.

Moore contends that the district court's reliance upon the *Parratt* line of cases was in error. She argues that the availability of post-termination remedies are not relevant to this case because the Defendants had ample opportunity to provide her with an adequate pre-termination hearing and failed to do so. *See Zinermon v. Burch*, 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990); *Macene v. MJW, Inc.* 951 F.2d 700 (6th Cir.1991); *Mertik v. Blalock*, 983 F.2d 1353 (6th Cir.1993).

In *Zinermon*, the Supreme Court explained the*Parratt*and *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) cases:

> The reasoning of Parratt and Hudson emphasizes the State's inability to provide predeprivation process because of the random and unpredictable nature of the deprivation, not the fact that only property losses were at stake. In situations where the State feasibly can provide a predeprivation hearing before taking property, it generally must do so regardless of the adequacy of a postdeprivation tort remedy to compensate for the taking.

*Zinermon*, 494 U.S. at 132, 110 S.Ct. at 987.

We have adopted this approach. In *Macene*, we held:

> In this Circuit, then, a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available state remedies would not adequately compensate for the loss.

*Macene*, 951 F.2d at 706. This case clearly falls in the first category.[2]

We further explained our position in *Mertik:*

> Cases in which a due process challenge is made to deprivations resulting from the enforcement of an established state procedure stand in sharp contrast to Parratt and Hudson cases. In such cases, the actions at issue are not random or unauthorized, and it is both practical and feasible for the state to provide pre-deprivation process to the aggrieved party. A § 1983 plaintiff making this type of claim need not plead or prove the inadequacy of state remedies.

*Mertik*, 983 F.2d at 1365.

In view of the foregoing, the district court erred in applying *Parratt* to the present case. Moore was required neither to plead nor prove the inadequacy of post-termination state law remedies in order to prevail. Instead, because the termination hearing conducted by Simmons was neither a random nor unauthorized event, but rather was done pursuant to established procedures, we must "evaluate the challenged procedures directly to ensure that they comport with due process." *Macene*, 951 F.2d at 706.

■ The traditional standard for the constitutionality of a particular procedure focuses on three factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

Moore undisputedly received written notice of the hearing and was given an opportunity to be heard. The pertinent question

---

2. The hearing conducted by Simmons was pursuant to Tennessee statute. The pertinent statutory provision he used reads: "[T]he superintendent *may dismiss any employee* under the superintendent's jurisdiction for incompetence, inefficiency, insubordination, improper conduct or neglect of duty; provided, that no one shall be dismissed without first having been given, in writing, due notice of the charge or charges and an opportunity *for defense.*" Tenn.Code Ann. § 49–2–301(f)(33).

that remains is whether Simmons's behavior at the hearing deprived Moore of due process. Moore takes issue with the fact that Simmons acted as an investigator, the charging party, the presiding officer at her hearing, and the party responsible for rendering the opinion concerning Moore's termination as a teacher. Moore contends that the totality of the circumstances surrounding her discharge, including Simmons's dual roles as presiding officer and investigator, his unwillingness to be cross-examined, and the finality of the decision, violated her due process rights. Defendants cite *Duchesne v. Williams*, 849 F.2d 1004 (6th Cir.1988)(en banc), where we found no due process violation by allowing a city manager to initiate charges, preside over the employee's pretermination hearing, testify in the hearing, and render a decision regarding the employee's discharge.

We agree with the Defendants that the process offered Moore was constitutionally sufficient. She received written notice of the charges against her, as well as an explanation of the Board's evidence, and was offered an opportunity to present her side of the story. This meets the requirements of *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985), and *Duchesne*, 849 F.2d at 1007. Simmons's dual roles at the hearing are not fatal to the process. *See Duchesne*, 849 F.2d at 1006 ("The right to respond before the official responsible for the discharge is sufficient.").

## C

Moore was apparently granted tenure by the Johnson City Board on April 5, 1993. There is a dispute as to whether the Board acted intentionally or inadvertently in conferring this status upon Moore. If indeed she is a tenured teacher, then she would have increased statutory due process protection before she could be terminated. Tenn.Code Ann. §§ 49–5–511 and 512. The district court found that the Board accidentally conferred tenure upon Moore, and that, in any event, she had not met the requirements of the Tennessee Teacher Tenure Act. Tenn. Code Ann. §§ 49–5–503(2), 49–5–504(a). We review this mixed question of law and fact de novo. *Waxman v. Luna*, 881 F.2d 237, 239 (6th Cir.1989).

The pertinent portion of § 49–5–503(2)(C) reads, " (2) 'Permanent tenure' applies to any teacher who ... (C) Has completed a probationary period of three (3) school years or not less than twenty-seven (27) months within the last five-year period, the last year to be employed as a regular teacher[.]" Apparently, Moore contends that she had completed the twenty-seven month probationary period by including the following in her calculus: three years as a teacher's aide; one year as a teacher intern; from March 18, 1992, until the end of the 1991–92 school year as a regular teacher; and the entire 1992–93 school year as a regular teacher. Defendants concede that Moore's time as a regular classroom teacher which includes the partial 1991–92 school year and the entire 1992–93 school year (totaling approximately eleven months) should be considered. They also will assume *arguendo* that employment as an intern (ten months) should count toward tenure. However, the two parties disagree as to whether Moore's employment as a teacher's aide should be considered. Clearly, if this period counts toward tenure, then Moore has indeed completed the required probationary period.

The question for us is whether time as a teacher's aide should be included toward Moore's probationary period. The case law does not address the issue directly, but the language of Tennessee Code Annotated § 49–5–504(a) is helpful. It reads:

(a) Any teacher, otherwise qualified for 'permanent tenure' status or 'limited tenure' status shall serve three (3) years or not less than twenty-seven (27) months within a five-year period as a probationary teacher before acquiring 'permanent tenure' status or 'limited tenure' status.

The phrase, "probationary teacher," seems to refer only to those individuals that can be classified as teachers. Taking Moore's position, almost any job within the school system, including clerical or janitorial staff, would apply toward tenure as long as that individual was employed as a "regular teacher" for the year immediately preceding tenure.

This does not seem to be the intention of the Tennessee legislature. Accordingly, Moore did not qualify for tenure under the statute.

**AFFIRMED.**