*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2004 FED App. 0225P (6th Cir.)
File Name: 04a0225p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————

LeCarthy Mitchell,
   *Plaintiff-Appellant,*

   *v.*

Robin Fankhauser and The
Board of Education of
Fayette County,
Kentucky,
   *Defendants-Appellees.*

No. 03-5279

———————

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 02-00070—Joseph M. Hood, District Judge.

Argued: April 29, 2004

Decided and Filed: July 14, 1004

Before: GUY, GILMAN, and COOK, Circuit Judges.

———————

**COUNSEL**

**ARGUED:** Alice Margaret O'Brien, BREDHOFF &

KAISER, Washington, D.C., for Appellant. Robert L. Chenoweth, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellees. **ON BRIEF:** Alice Margaret O'Brien, John M. West, BREDHOFF & KAISER, Washington, D.C., for Appellant. Robert L. Chenoweth, CHENOWETH LAW OFFICE, Frankfort, Kentucky, for Appellees.

———————

**OPINION**

———————

RONALD LEE GILMAN, Circuit Judge. After an abbreviated pre-termination hearing, LeCarthy Mitchell was fired from his job as a school custodian for allegedly stealing school property. No post-termination hearing was provided by the school district. Mitchell filed suit pursuant to 42 U.S.C. § 1983, claiming that the school superintendent and the school district violated his constitutional right to procedural due process. The district court granted summary judgment in favor of the defendants. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. Factual history

Mitchell worked for the Fayette County Public School (FCPS) District in Lexington, Kentucky from October of 1993 through August of 2001. His last assignment was as head custodian at Henry Clay High School. Mitchell's status as an employee with more than four years of continuous service with FCPS entitled him, under Kentucky law, to not be discharged except "for cause." Ky. Rev. Stat. 161.011(5). "For cause" includes "incompetency, neglect of duty, insubordination, inefficiency, misconduct, immorality, or

other reasonable grounds which are specifically contained in board policy." Ky. Rev. Stat. 161.011(7). The statute also provides that "[l]ocal school boards shall develop and provide to all classified employees written policies which shall include . . . [d]iscipline guidelines and procedures that satisfy due process requirements." Ky. Rev. Stat. 161.011(9)(c).

By letter dated August 15, 2001, FCPS superintendent Dr. Robin L. Fankhauser suspended Mitchell for fifteen days with pay. Fankhauser explained that her action was "based upon the fact that I have received allegations against you concerning theft of school property. The purpose of the suspension with pay is to allow me the opportunity to investigate the facts involved in these allegations." A "hand-delivered" designation is found at the top left-hand corner of the letter, and a form titled "Attempt to Serve" was introduced into evidence, suggesting that FCPS Law Enforcement Officer JD Jones attempted to deliver the letter at 6:15 p.m. on August 15. Whether Mitchell ever received the letter is not clear from the record.

Also introduced into evidence—over Mitchell's objection—is a FCPS Law Enforcement "investigative report" dated August 15, 2001, purporting to record an interview between Officer Jones and Mitchell. Mitchell is alleged to have "admitted taking a sewing-machine cabinet from Henry Clay High School to his home in Frankfort, Kentucky. He stated that he later put the cabinet in the dumpter [sic]. The cabinet has not been recovered."

On August 20, 2001, Mitchell was called in to meet with Fankhauser and various other FCPS officials. Mitchell was then informed of the allegations that had been made against him—by people who were not present at the meeting—to the effect that Mitchell had helped another custodian steal school property. At the meeting, Mitchell admitted only to having taken a sewing-machine cabinet home with him, but then returning it to the school.

Fankhauser notified Mitchell in a letter a few days after the meeting that she was terminating him based upon the fact that, in July of 2001, he had been "observed helping another custodian load several ladders, lumber, folding chairs, and sewing machines into his car." In a letter responding to his termination, Mitchell denied the allegations against him "either because they are untrue or because, to the extent any of the charges have a basis in fact, they do not warrant the extreme sanction of termination . . . ." Mitchell also requested an opportunity "to challenge the charges in a due process hearing before a neutral finder of fact . . . ." FCPS's general counsel denied Mitchell's request, explaining that the August 20, 2001 meeting served as Mitchell's due process hearing: "Dr. Fankhauser listened to all parties at the meeting and subsequently made the decision to terminate Mr. Mitchell[] . . . ."

## B. Procedural history

Mitchell brought suit against Fankhauser and FCPS pursuant to 42 U.S.C. § 1983, alleging that Fankhauser and the Board violated Mitchell's right to the due process of law by refusing "to provide him with an evidentiary due process hearing upon the reasons" for his termination. After Fankhauser and FCPS answered, both sides moved for summary judgment.

Fankhauser and FCPS attached to their trial-court brief in support of summary judgment "seventeen pages detailing the factual allegations against" Mitchell. Mitchell moved to strike these documents on the basis that they were "offered only to influence the Court to make a decision on the underlying facts of the case and 'are not of record before the Court.'" Denying Mitchell's motion, the district court reasoned that the attachments were "relevant to what if any investigation took place and . . . what pre- or post-termination hearings actually were necessary to satisfy the requirements of due process." The district court denied Mitchell's motion for summary judgment and granted summary judgment to

Fankhauser and FCPS on January 30, 2003. Mitchell filed a timely notice of appeal of the court's grant of summary judgment to Fankhauser and FCPS.

## II. ANALYSIS

### A. Standard of review

We review a district court's grant of summary judgment de novo. *Therma-Scan, Inc. v. Thermoscan, Inc.* 295 F.3d 623, 629 (6th Cir. 2002). Summary judgment is proper where there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Due process

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "provides that certain substantive rights—life, liberty, and property—cannot be deprived except pursuant to constitutionally adequate procedures." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 541 (1985). This court undertakes a two-step analysis when considering claims for the violation of due process rights. *Leary v. Daeschner*, 228 F.3d 729, 741-42 (6th Cir. 2000). The first step determines whether the plaintiff has a property interest entitled to due process protection. *Id.* at 741. Second, if the plaintiff has such a protected property interest, "this court must then determine what process is due." *Id.* at 742 (quotation marks and citation omitted). In the present case, Fankhauser and FCPS do not contest that Mitchell had

a protected property interest in his employment. The only question on appeal, therefore, is whether Mitchell was afforded all of the process that he was due.

In the context of employment rights, the Supreme Court has explained that "the root requirement of the Due Process clause" is "that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest." *Loudermill*, 470 U.S. at 542 (quotation marks and citation omitted) (emphasis in original). Acknowledging "the severity of depriving a person of the means of livelihood[,]" the Court has noted that "[w]hile a fired worker may find employment elsewhere, doing so will take some time and is likely to be burdened by the questionable circumstances under which he left his previous job." *Id.* at 543.

Pre-termination hearings "need not be elaborate." *Id.* at 545. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546. This "initial check against mistaken decisions" is all that is necessary where an employee is provided with a full post-termination hearing. *Id.* at 545; *Brickner v. Voinovich*, 977 F.2d 235, 237 (6th Cir. 1992) ("The Supreme Court has held that, depending on the circumstances, a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage."). Post-termination hearings, on the other hand, "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988).

This court addressed the interplay between pre- and post-termination procedures in *Carter v. Western Reserve Psychiatric Habilitation Center*, 767 F.2d 270 (6th Cir. 1985) (per curiam). In *Carter*, several public employees brought suit under 42 U.S.C. § 1983, alleging violations of their rights to the due process of law. One of the defendants, Paul Wade,

argued that his constitutional right to due process had been violated when he was discharged by his employer without receiving a meaningful pre-termination or post-termination hearing. The district court had found that Wade's pre-termination hearing was constitutionally sufficient because Wade had received notice of the charge against him and was afforded an opportunity to respond. This court held "that the required extent of post-termination procedures is inextricably intertwined with the scope of pre-termination procedures." *Id.* at 273. The district court's grant of summary judgment to the employer on Wade's claims was reversed and remanded for a determination as to whether the post-termination process was constitutionally sufficient, reasoning:

> Where, as here, a court has approved an abbreviated pre-termination hearing, due process requires that a discharged employee's post-termination hearing be substantially more "meaningful." At a minimum, this requires that the discharged employee be permitted to attend the hearing, to have the assistance of counsel, to call witnesses and produce evidence on his own behalf, and to know and have an opportunity to challenge the evidence against him.

*Id.*

Mitchell's case is similar to that of the discharged employee in *Carter*. The August 20, 2001 meeting that Mitchell had with Fankhauser and the other FCPS officials provided Mitchell with oral notice of the charges against him and an opportunity to present his side of the story, analogous to the "abbreviated pre-termination hearing" provided to the employee in *Carter*. But Mitchell was not afforded a post-termination hearing; in fact, FCPS has no post-termination process. Fankhauser and FCPS explain in their brief that the FCPS policy "was intended to take care of all the requirements of due process *pre-termination*." (Emphasis added.)

Despite this intent, we are convinced that the hearing actually provided to Mitchell was not in itself sufficient to satisfy the requirements of due process as set forth in *Carter*. Mitchell, like the employee discharged in *Carter*, was afforded only an abbreviated pre-termination hearing. He is therefore entitled to a more meaningful post-termination hearing. This is not to say that two hearings are always required to satisfy due process. If the pre-termination hearing is more "meaningful," as described in *Carter*, then no post-termination hearing would be necessary. But, as in *Carter* itself, that is not what took place in the case before us.

We now turn to the district court's references to *Parratt v. Taylor*, 451 U.S. 527 (1981), and *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), in support of its decision to the contrary. The district court, relying upon these two cases, held that Mitchell was "required to show that available state procedures were inadequate to compensate him for the deprivation of his property" in order for him to state a claim under 42 U.S.C. § 1983.

In *Parratt*, a Nebraska prisoner sued prison officials under § 1983, alleging that the prison officials deprived him of the due process of law by negligently losing his mail-order hobby materials. The Court held that the prisoner had failed to allege a due process violation, reasoning that the loss of property "did not occur as a result of some established state procedure" and that the prisoner could seek redress pursuant to state tort law. *Id.* at 543. Pre-deprivation due process was not at issue in *Parratt* because of how the property loss occurred. A negligent loss of property "is not a result of some established state procedure and the State cannot predict precisely when the loss will occur." *Id.* at 541. The Court accordingly noted that "in most cases it is not only impracticable, but impossible, to provide a meaningful hearing before the deprivation." *Id.*

In the subsequent case of *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435-36 (1982), the Court emphasized that

*Parratt* dealt with a deprivation of property resulting from the random, unauthorized act of a state employee, which is distinct from a deprivation resulting from an established state procedure. *See also Hudson v. Palmer*, 468 U.S. 517, 532 (1984) ("[P]ostdeprivation remedies do not satisfy due process where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized action."); *Zinermon v. Burch*, 494 U.S. 113, 128 (1990) (explaining that "the *Parratt* rule comes into play" only in situations where "postdeprivation tort remedies are all the process that is due, simply because they are the only remedies that the State could be expected to provide").

This court first applied *Parratt* in *Vicory v. Walton*, 721 F.2d 1062 (6th Cir. 1983), addressing whether a § 1983 plaintiff alleging the deprivation of property without the due process of law must plead and prove "the inadequacy of state processes, including state damage remedies to redress the claimed wrong." *Id.* at 1063. The plaintiff in *Vicory* owned a mobile-home trailer, which he rented out. After a triple homicide occurred in the trailer, law enforcement officials seized the trailer to investigate the crime. Vicory sued to recover his trailer under § 1983, alleging that he was deprived of his property without the due process of law. This court, relying upon *Parratt*, held that Vicory could not invoke § 1983 without showing that his state-court remedies were inadequate. *Id.* at 1064. Specifically, the court noted that Vicory could resort to a forcible entry and detainer suit in Ohio state court. The court noted the important distinction that exists between cases such as *Parratt* and *Vicory*—involving property deprivation claims "arising out of the alleged misconduct of state officers"—and challenges to established state procedures. *Id.*

This significant distinction, as stated by the Supreme Court in *Parratt, Logan*, *Hudson*, and *Zinermon*, and echoed by this court in *Vicory*, has unfortunately not been consistently applied in our circuit's caselaw. The two parallel but contradictory lines of authority are discussed below.

This court decided the case of *Carter v. Western Reserve Psychiatric Habilitation*, 767 F.2d 270 (6th Cir. 1985), almost two years after *Vicory*. As previously mentioned, *Carter* followed the Supreme Court's decision in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532 (1985), holding that due process required that the public employee be afforded a "meaningful" post-termination hearing, having been provided with only an "abbreviated" pre-termination hearing. *Carter*, 767 F.2d at 273. Although *Carter* succeeded *Vicory*, it did not mention *Vicory*. We note that this was not illogical given *Vicory*'s acknowledgment of the "difference between a challenge to an established state procedure as lacking in due process . . . and a property damage claim arising out of the alleged misconduct of state officers." *Vicory*, 721 F.2d at 1064. *Carter* deals with the former, while *Vicory* deals with the latter.

*Watts v. Burkhart*, 854 F.2d 839 (6th Cir. 1988), was the next Sixth Circuit case to address procedural due process in the context of an employment-related § 1983 claim. In *Watts*, a doctor brought a § 1983 suit against a state administrative body that sought to suspend his license to practice medicine. Dismissing the case, the district court reasoned that *Parratt* foreclosed a § 1983 procedural due process action where the state courts provide adequate post-deprivation remedies. *Id.* at 841. This court held that "*Parratt* clearly does not apply and the district court erred in concluding that it did." *Id.* at 844. *Parratt* and *Vicory*, this court explained, are inapplicable "where a deprivation of property is caused by conduct pursuant to established state procedure, rather than random and unauthorized conduct." *Id.* at 843 (quoting *Hudson v. Palmer*, 468 U.S. 517, 532 (1984)) (quotation marks omitted). The state action at issue in *Watts* was "the state agency's deliberate decision to obtain either the voluntary surrender of Watts' DEA authorization or the summary suspension of Watts' license, which was done under established state procedure[.]" *Id.* This court reasoned that because the pre-deprivation actions taken in *Watts* were

pursuant to established state procedures, *Parratt* did not apply.

Despite the Supreme Court's and this court's pronouncements that *Parratt* applies only to random, unauthorized deprivations of property, this court has occasionally applied *Parratt*'s requirement of pleading the inadequacy of state-court remedies more broadly. *See Jefferson v. Jefferson County Public Sch. Sys.*, 360 F.3d 583, 588 (6th Cir. 2004) (holding that a teacher who was afforded a pre-termination hearing and then was suspended from her job and allegedly forced to retire could not seek relief under § 1983 for an alleged deprivation of her procedural due process rights "without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process rights" per *Parratt*); *Meyers v. City of Cincinnati*, 934 F.2d 726, 731 (6th Cir. 1991) (relying exclusively upon *Vicory* to hold broadly that in procedural due process cases brought pursuant to § 1983, "the plaintiff must attack the state's corrective procedure as well as the substantive wrong"); *Hawks v. City of Pontiac*, 874 F.2d 347, 350-51 (6th Cir. 1989) (holding that, under *Hudson* and *Vicory*, a plaintiff alleging a due process violation in a § 1983 case "has the burden of showing the inadequacy of his remedies under state law"); *Sewell v. Jefferson County Fiscal Court*, 863 F.2d 461, 468 (6th Cir. 1988) (stating in dicta that a plaintiff who brought a § 1983 procedural due process suit, not based upon a random, unauthorized deprivation of property, was barred from recovering under § 1983 pursuant to *Parratt* and *Vicory* because she failed to demonstrate that her state-court remedies were inadequate).

On the other hand, other decisions of this court, in addition to *Carter* and *Watts*, have recognized the distinction between random, unauthorized acts and established state procedures. *See Moore v. Bd. of Educ. of Johnson City Schs.*, 134 F.3d 781, 785 (6th Cir. 1998) (holding that a teacher who brought a § 1983 suit alleging deprivation of her procedural due process rights "was required neither to plead nor prove the

inadequacy of post-termination state law remedies in order to prevail," reasoning that where a plaintiff alleges deprivation of due process pursuant to established state procedures, rather than random, unauthorized acts, "it is both practicable and feasible for the state to provide pre-deprivation process to the aggrieved party"); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1349-50 (6th Cir. 1992) (stating broadly that *Parratt* and *Vicory* require § 1983 plaintiffs claiming procedural due process violations to show the inadequacy of state procedures, but basing its holding that terminated school employees were entitled to a post-termination hearing on *Carter*'s mandate that where an abbreviated pre-termination hearing is afforded, due process requires a more "meaningful" post-termination hearing); *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991) ("In this Circuit, . . . a § 1983 plaintiff may prevail on a procedural due process claim by either (1) demonstrating that he is deprived of property as a result of established state procedure that itself violates due process rights; or (2) by proving that the defendants deprived him of property pursuant to a 'random and unauthorized act' *and* that available state remedies would not adequately compensate for the loss. *Parratt* is applied to those cases falling under the second category.") (emphasis in original) (citation omitted).

We are therefore faced with deciding between multiple precedents on both sides—those that apply *Parratt* only to random, unauthorized deprivations of property and those that apply *Parratt* more broadly. Our analysis convinces us that the correct line of authority in the Sixth Circuit is that of *Watts*, *Macene*, *Carter*, and *Moore*. In the present case, Mitchell was not deprived of his property interest in his job pursuant to a random or unauthorized act. Mitchell, therefore, "was required neither to plead nor prove the inadequacy of post-termination state-law remedies in order to prevail." *Moore*, 134 F.3d at 785. We therefore decline to apply *Parratt* and *Vicory* to the present case.

**III. CONCLUSION**

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** for further proceedings consistent with this opinion.