**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name:  05a0380n.06
Filed:  May 11, 2005

No. 04-1319

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| WILLIAM MOSS, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| J.P. BIERL, in his individual and | ) | DISTRICT OF MICHIGAN |
| official capacity, and the MICHIGAN | ) | |
| SOUTH CENTRAL POWER | ) | |
| AGENCY, | ) | **O P I N I O N** |
| | ) | |
| **Defendants-Appellees.** | ) | |
| | ) | |

Before:  KENNEDY, MOORE, and SUTTON, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  In the underlying 42 U.S.C. § 1983 suit,

Plaintiff William Moss ("Moss") alleges that the manner in which Defendant J.P. Bierl ("Bierl")

terminated Moss's employment with Defendant Michigan South Central Power Agency ("MSCPA")

violated the Fourteenth Amendment Due Process Clause.  The district court granted the defendants'

summary judgment motion and denied Moss's partial-summary-judgment motion.  Moss now

appeals from the judgment entered by the district court.  We **AFFIRM**.

# I.  BACKGROUND

The facts of this case, taken in the light most favorable to Moss, can be summarized as follows.[1] From 1981 until his dismissal on December 19, 2003, Moss was employed by MSCPA. MSCPA "is a public body politic and corporate . . . created by legislative act and agreement between Hillsdale, Coldwater, Marshall, Union City and the Village of Clinton for the purpose of providing power to residents and businesses in various areas of Lenawee, Hillsdale and Branch counties." Record 2 at 3 (Answer). At the time of the events at issue in this case, Moss was serving as an MSCPA Shift Foreman.

On December 10, 2002, MSCPA Plant Clerk Secretary Christina VanKampen ("VanKampen") informed MSCPA Operations and Maintenance Superintendent James Balbo ("Balbo") that "William Moss' eyes were red and glossy and that his conduct was unusual." Joint Appendix ("J.A.") at 133 (VanKampen Affidavit). VanKampen also informed Balbo "that she believed that William Moss was under the influence of marijuana." J.A. at 130 (Balbo Affidavit). Balbo then "personally observed William Moss as he stood in the control room at the facilities of [MSCPA]" and "observed that William Moss' eyes were red and glossy." J.A. at 130 (Balbo Affidavit).

Moss, a longtime marijuana activist, has conceded that he had smoked marijuana on the evening of December 9, 2002. However, Moss claims that he has "never been under the influence [of marijuana] at work." J.A. at 43 (Moss Dep.). According to Moss, his eyes appeared glassy the following day because he was sick at the time and had taken (non-narcotic) cold medication and herbal remedies. Moss has also asserted that his left eye is "always glassy" because he "was in a

---

[1]As we conclude that summary judgment for the defendants is warranted, even viewing the facts in the light most favorable to Plaintiff William Moss ("Moss"), we need not consider whether the denial of Moss's motion for partial summary judgment was proper.

3

motorcycle accident and had to have [his] left eye taken out of its socket and put back in." J.A. at 49 (Moss Dep.).

After informing Moss that someone had suggested that Moss was under the influence of marijuana, Balbo took Moss to an urgent-care facility and required him to submit to a urine test for marijuana metabolites. On December 13, 2002, MSCPA Director of Finance Lorna Nenciarini sent Moss a letter scheduling a meeting for December 17, 2002, but giving no indication as to the purpose of the meeting.[2] The meeting was held as scheduled on December 17. During the meeting, Moss was informed for the first time that his December 10 urine sample had tested positive for marijuana metabolites. Moss was then given the opportunity to respond to the allegations. Because he "had no representation and it looked pretty bad," J.A. at 118 (Moss Dep.), Moss chose not to make a statement at that time. Moss's employment with MSCPA was terminated by letter dated December 19, 2002. Forty-two days later, on January 30, 2003, Moss, a Vietnam-era veteran,[3] through counsel formally requested a hearing pursuant to § 35.402 of the Michigan Veterans Preference Act ("Michigan VPA"). Moss directed this request to Bierl, the General Manager of MSCPA, with copies listed to the Governor of Michigan, the mayors of each of the five entities that had created MSCPA, and the members of the MSCPA board of directors. On February 17, 2003,

_____

[2]The letter read in full:
This letter is to confirm the phone message that I left on your machine this morning. We have scheduled a meeting with you, at the Agency Administration Building, for 11:30 a.m. on Tuesday, December 17, 2002. Please contact me immediately if you would be unable to attend.
Joint Appendix ("J.A.") at 86 (Dec. 13, 2002 letter from Lorna Nenciarini to William Moss).

[3]Moss was in active service in the United States Navy during the Vietnam War. He entered active service on July 11, 1962, and was transferred "under honorable conditions" to reserve service on October 11, 1964. J.A. at 88 (Armed Forces of the United States Report of Transfer or Discharge).

4

MSCPA responded by letter stating it was not covered by the Michigan VPA because MSCPA was "a legislatively created independent quasi corporation with no nexus of employment to the creating entities." J.A. at 65 (Feb. 17, 2003 letter from MSCPA's attorney to Moss's attorney). On February 25, 2003, legal counsel for the Governor of Michigan responded by letter stating that MSCPA

> is owned and operated by local governmental units that are participating members, rather than by the State of Michigan. Therefore [Moss] was not a state employed veteran at the time he was separated from his employment with [MSCPA]. Based on these facts, the hearing before the Governor authorized under section 2 of the [Michigan VPA] does not apply to [Moss].

J.A. at 68 (Feb. 25, 2003 letter from the Michigan Governor's legal counsel to Moss's attorney). Moss's attorney wrote back to the Michigan Governor's legal counsel on March 3, 2003 and made several additional attempts to contact individuals in the Michigan Governor's legal department by telephone, without receiving a satisfactory response.

On May 27, 2003, Moss filed suit in the U.S. District Court for the Eastern District of Michigan, alleging deprivation of his Fourteenth Amendment rights in violation of 42 U.S.C. § 1983. The parties filed cross-motions for summary judgment. Ruling from the bench, the district court granted summary judgment in favor of Bierl and MSCPA and denied Moss's partial-summary-judgment motion. In so ruling, the district court noted that "there is a genuine issue of material fact as to whether the [Michigan VPA] is or is not applicable here because of the agency's status as a joint agency." J.A. at 198 (Summary Judgment Hr'g). The district court concluded, however, that summary judgment for the defendants was still proper because Moss had failed to file a timely written protest after his termination, as required by statute. Because of Moss's failure to file a timely written protest, the district court concluded that the protections of the Michigan VPA were "inapplicable" to Moss's claim. J.A. at 200 (Summary Judgment Hr'g). The district court explicitly

5

declined to toll the 30-day protest period or to require the defendants to demonstrate prejudice from Moss's failure to file a timely written protest. The district court also issued an alternative ruling that even if the Michigan VPA did apply to MSCPA, Moss's federal due process rights had not been violated.

## II.  ANALYSIS

### A.  Jurisdiction

The district court had jurisdiction over this 42 U.S.C. § 1983 action pursuant to the general federal-question statute, 28 U.S.C. § 1331.  We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291.

### B.  Standard of Review

We conduct de novo review of decisions granting summary judgment, drawing all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c).  To defeat summary judgment, the nonmovant must simply show "sufficient evidence to create a genuine issue of material fact."  *McLean*, 224 F.3d at 800. Accordingly, to survive summary judgment in this § 1983 action, Moss must demonstrate a genuine issue of material fact as to "two elements."  *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). First, Moss must demonstrate a genuine issue of fact as to "the deprivation of a right secured by the Constitution or laws of the United States."  *Id*. (internal quotations omitted). Second, he must show that "the deprivation was caused by a person acting under color of state law."  *Id*. (internal

6

quotations omitted). In determining whether a Fourteenth Amendment Due Process Clause claim establishes a genuine issue of material fact as to the deprivation of a constitutional right, we apply an additional two-step analysis. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004). First, we "determine[] whether the plaintiff has a property interest entitled to due process protection." *Id.* If we conclude that the plaintiff does have such a protected property interest, we must then "determine what process is due" with respect to that property right. *Id.* (quotation marks and citation omitted).

## C. Due Process

Moss has no federal due process claim unless he can establish that he had a property interest in his employment with MSCPA that would be protected by the Fourteenth Amendment. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985). A property interest in continued employment is "not created by the Constitution." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). When a property interest exists, it is "created and . . . defined by existing rules or understandings that stem from an independent source such as state law." *Id.* Here, Moss asserts that the Michigan VPA provides him with a property interest in his employment with MSCPA. *See* MICH. COMP. LAWS § 35.402; *see also Jackson v. Detroit Police Chief*, 506 N.W.2d 251, 253 (Mich. Ct. App. 1993).

### 1. Pre-Termination Procedures

As an initial matter, we note that if the VPA does apply, the record does not provide sufficient evidence to allow us to conclude that Moss's pre-termination federal due process rights were violated. The Supreme Court has explained that when state law provides for a "full post-termination hearing," the hearing required pre-termination is relatively limited. *Loudermill*, 470

7

U.S. at 546. Prior to termination, "[t]he tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* Moss received oral notice of the charges against him when confronted by Balbo on December 10, 2002. Sufficient explanation of MSCPA's evidence was presented to Moss at the December 17, 2002 meeting, when Moss was provided with the test results showing the presence of marijuana metabolites in his urine. As Moss conceded in his deposition, he had an opportunity to say anything he wanted at this meeting, and accordingly we must conclude that he had an opportunity to present his side of the story. We emphasize that these limited pre-termination procedures satisfy federal due process requirements only because of the extensive post-termination hearing and remedial provisions provided by Michigan law — including full compensation for lost work time if reinstatement is ordered. *See id.*; MICH. COMP. LAWS § 35.402.[4]

## 2. Post-Termination Hearing

Moss also contends that his due process rights were violated because neither the MSCPA nor the Governor of Michigan in fact provided him with a post-termination hearing. We disagree.

In order to qualify for the protections it provides to veterans, the Michigan VPA requires that a written protest against an adverse employment action be filed within thirty days of the challenged action:

> [When a] veteran has been removed, transferred, or suspended other than in accordance with the provisions of this act, he shall file a written protest with the officer whose duty under the provisions of this act it is to make the removal, transfer, or suspension, within 30 days from the day such veteran is removed, transferred, or

---

[4]As Moss waived all rights available to him under the Michigan Veterans Preference Act ("Michigan VPA") by failing to comply with the written-protest requirement, we need not address whether Moss's positive test for marijuana metabolites was sufficient to support suspension or termination under the Michigan VPA.

suspended; otherwise the veteran shall be deemed to have waived the benefits and privileges of this act[.]

MICH. COMP. LAWS § 35.402. Moss concedes that he did not file the required written protest within the statutory thirty-day period, but rather waited to do so until forty-two days after his dismissal. Appellant Br. at 52. Moss provides no explanation as to why he failed to file a written protest within the statutory period. Although there may be situations where a requirement of a written protest within a thirty-day period would violate *Loudermill*'s procedural mandate, *see Loudermill*, 470 U.S. at 541, we see no reason to reach such a conclusion in this case. Absent any explanation of why Moss did not file a written protest within the thirty-day statutory period, we decline to hold that such a requirement violated his federal due process rights. Instead of providing such an explanation, Moss makes several arguments as to why the written-protest requirement should not bar his due process claim. These arguments are without merit.

First, Moss contends that a violation of his due process rights was complete once MSCPA terminated him without providing "a proper pre-termination hearing," Appellant Br. at 37, and it was accordingly not necessary for him to file a protest within the statutory period to preserve his federal due process claim. As we have determined above that Moss in fact received all pre-termination process that he was due, no violation of his due process rights occurred during the pre-termination proceedings.

Second, Moss asserts that because both MSCPA and the Michigan Governor's Office adopted the position that the Michigan VPA did not apply, a written protest was unnecessary. Had Moss filed a timely written protest, and had MSCPA and the Michigan Governor's Office nonetheless refused to provide a post-termination hearing, we would then be called upon to determine whether the available state remedies were inadequate. However, we are not faced with

9

such a situation. Although both MSCPA and the Governor's Office have asserted that they were not required to provide Moss with a Michigan VPA hearing, we can only speculate as to whether they would have maintained the same position if Moss had filed a timely written protest.

Third, Moss contends that Michigan courts would not enforce the thirty-day statutory period as it would violate the Equal Protection Clauses of the Michigan Constitution and the U.S. Constitution. We are not convinced that the Michigan courts would have declined to enforce a requirement that Moss file a written protest within thirty days. Moss correctly points out that the Michigan Supreme Court has consistently refused to apply certain statutory notice requirements in personal-injury cases involving claims against the state highway department or county road commissions.[5] However, Moss points to no authority — and we are aware of none — extending this skeptical view of notice requirements to the Michigan VPA's written-protest requirement. Moreover, there is authority to the contrary. *See Cook v. Jackson*, 249 N.W. 619 (Mich. 1933) (holding that mandamus petitioner waived the benefits of an earlier version of the Michigan VPA when he filed a written protest two days after his discharge with the prison warden discharging him,

---

[5]*See generally Reich v. State Highway Dep't*, 194 N.W.2d 700, 702 (Mich. 1972) (holding that sixty-day notice requirement applicable to claims against only government tortfeasors violated state and federal Equal Protection Clauses); *Carver v. McKernan*, 211 N.W.2d 24, 26 (Mich. 1973) (holding that six-month notice requirement for claims against Motor Vehicle Accident Claim Fund would be enforced only on a showing that the government had been prejudiced by the failure to file timely notice); *Hobbs v. Michigan State Highway Dep't*, 247 N.W.2d 754, 756 (Mich. 1976) (holding that 120-day notice period applicable to claims against government tortfeasors would be enforced only on a showing that government had been prejudiced by the failure to file notice); *Brown v. Manistee County Road Comm'n*, 550 N.W.2d 215, 221 (Mich. 1996) (reaffirming *Hobbs* and holding that sixty-day notice period for claims against county road commissions violated equal protection when 120-day notice period applied to similar claims against other political subdivisions of the state). *But see Forest v. Parmalee*, 262 N.W.2d 653, 657 (Mich.1978) (upholding two-year statute of limitations for claims against government tortfeasors despite three-year statute of limitations applicable to claims against private tortfeasors).

but failed to file a protest with the governor within thirty days); *Sherrod v. Detroit*, 625 N.W.2d 437, 443 (Mich. Ct. App. 2001) (noting that thirty-day written-protest requirement "is akin to a preservation requirement in that the employee must either file a written protest within the specified period or waive the privileges of the [Michigan] VPA") (citing *Cook*, 249 N.W. 619); *cf. Glover v. City of Kalamazoo*, 296 N.W.2d 280, 282 (Mich. Ct. App. 1980) (treating the thirty-day written-protest requirement as generally applicable, but finding that it was tolled during the period of time that criminal proceedings were pending against the plaintiff).  Accordingly, we decline to hold that the Michigan courts would generally fail to enforce the Michigan VPA written-protest requirement. *Cf. Hallstrom v. Tillamook County*, 493 U.S. 20, 27-28 (1989) (upholding 60-day notice provision in federal Resource Conservation and Recovery Act of 1976, and explaining that "[t]he equities do not weigh in favor of modifying statutory requirements when the procedural default is caused by petitioners' failure to take the minimal steps necessary to preserve their claims."); *Coal Operators & Assocs., Inc. v. Babbitt*, 291 F.3d 912, 917 (6th Cir. 2002) ("In this case, plaintiffs failed to comply with [federal Surface Mining Control and Reclamation Act of 1977] notice provision and, since such notice provisions delimit the extent to which the sovereign has waived immunity, they cannot rely upon this section as a means of obtaining jurisdiction."); *Bd. of Tr. of Painesville Township v. City of Painesville*, 200 F.3d 396, 400 (6th Cir. 1999) (noting that compliance with notice provision in the federal Clean Water Act "is a jurisdictional prerequisite to recovery under the statute").

### III. CONCLUSION

As Moss has not demonstrated that he took the steps necessary to preserve any property right in his employment granted to him by Michigan law, he cannot maintain a Fourteenth Amendment Due Process Clause claim. Accordingly, we **AFFIRM** the judgment of the district court.