**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 13a0960n.06**

**No. 13-5316**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Nov 06, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| JERRY FIELDS, ) | |
| ) | |
| Plaintiff-Appellant, ) | |
| ) | |
| v. ) | ON APPEAL FROM THE UNITED |
| ) | STATES DISTRICT COURT FOR |
| RICK BENNINGFIELD, Individually and in his ) | THE WESTERN DISTRICT OF |
| official capacity as Taylor County Jailer; EDDIE ) | KENTUCKY |
| "HACK" MARCUM, Individually and in his ) | |
| official capacity as Taylor County Jailer; ) | |
| TAYLOR COUNTY FISCAL COURT; EDDIE ) | |
| ROGERS, TAYLOR COUNTY ) | |
| JUDGE/EXECUTIVE; JAMES JONES, ) | |
| MAGISTRATE; JOHN GAINES, ) | |
| MAGISTRATE; TOMMY CORBIN, ) | |
| MAGISTRATE; MATT PENDLETON, ) | |
| MAGISTRATE; ED GORIN, MAGISTRATE; ) | |
| RICHARD PHILLIPS, MAGISTRATE, ) | |
| ) | |
| Defendants-Appellees. ) | |
| ) | |
| ) | |

Before: BOGGS and SUTTON, Circuit Judges; CLELAND, District Judge.[*]

SUTTON, Circuit Judge. Jerry Fields worked as a jailer at the Taylor County Detention Center in Kentucky. He hurt his shoulder while restraining an inmate at the jail, forcing him to take medical leave. Nine months after Fields was injured, his doctor's excuse for leave expired, and Fields did not return to work. The jail fired Fields soon after the expiration. He sued in federal

---

[*] The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

court, alleging that the jail and various Taylor County employees violated his procedural due process rights by firing him without providing a hearing. The district court disagreed and granted summary judgment to the jail and its employees. We affirm.

In November 2008, Fields began work as a deputy prison guard in the Taylor County Detention Center. Things went smoothly at first. Fields performed well on the job, receiving a promotion from deputy to sergeant.

Events took a turn for the worse in June 2009, when Fields helped other deputies restrain an unruly inmate. During the scuffle, Fields tore his rotator cuff. Unable to perform his duties due to the injured shoulder, Fields obtained a series of medical notes from his physician explaining that he was restricted to light duty until the shoulder healed. In the last of these notes, Fields' physician indicated that Fields should be able to return to work in mid-February 2010.

Mid-February came and went, and Fields still had not returned to work, and the doctor had not offered any explanation why. On March 15, Captain Kevin Wilson sent a letter to Fields, informing him that he had been fired "effective as of 03/10/2010." R. 33-7 at 10. The letter gave five reasons: (1) his doctor's excuse had expired, (2) he was not eligible for FMLA leave, (3) his newly claimed neck injury was unrelated to the shoulder injury for which he was receiving workers' compensation, (4) he had not attempted to contact the jail and (5) he had not kept the jail informed about the status of his injury.

Fields received the letter on March 20. He took it to the Taylor County Fiscal Court, the entity that signed his paycheck. He spoke with Judge Executive Eddie Rogers, who told him he had a right to request a hearing. Fields did not request a hearing. Nor did he ask Judge Rogers any questions about the hearing process. After meeting with Judge Rogers, Fields met with Captain Wilson at the jail. Captain Wilson reiterated the reasons for Fields' termination. He also advised Fields that he should direct any questions about his discharge to the County Attorney.

Fields did not contact the County Attorney or request a hearing. He instead filed this § 1983 action, alleging that the jail violated (1) his federal due process rights by failing to provide him with a hearing before firing him and (2) state law prohibitions on wrongful discharge and retaliation.

The jail and the employees moved for summary judgment on Fields' due process claim and urged the district court not to exercise jurisdiction over Fields' state law claims. The district court granted their motion in full, concluding that the jail's procedures afforded Fields adequate pre-deprivation and post-deprivation procedures and that it was Fields' fault for not taking advantage of them. Fields appeals.

To succeed on his due process claim, Fields must show that he has a liberty or property interest in his job as deputy jailer and that the jail failed to provide sufficient process before depriving him of that interest. *Sickles v. Campbell Cnty.*, 501 F.3d 726, 730 (6th Cir. 2007). He has not met that burden.

Fields, to begin, had a property interest in his job as a "jailer," apparently taken from the old French ("gaol") and not far from the new French ("geôle"). *See* Oxford English Dictionary (online ed. 2013), *available at* www.oed.com. Under Kentucky law, the county jailer may dismiss a deputy jailer only "with cause," Ky. Rev. Stat. Ann. § 71.060(2), meaning the reason for dismissal must be "something of a substantial nature directly affecting the rights and interests of the public," *Martin v. Osborne*, 239 S.W.3d 90, 93 (Ky. Ct. App. 2007). Because a "for cause" limitation on a public employer's ability to fire its employees suffices to create a property interest in future employment, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538–39 (1985), Fields had a property interest in his position at the jail.

The key question is whether Fields received all of the process to which he was due. Fields argues he did not because he was not provided a hearing *before* his discharge, and the county's *post-deprivation* procedures did not solve the problem.

On the first point, there is something to his position. As a general rule, due process "requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Id.* at 542 (internal quotation marks omitted). This pre-discharge hearing is an "initial check against mistaken decisions" and thus "need not be elaborate." *Id.* at 545. That process generally will suffice if the employer gives the employee notice of the charges against him, an explanation of its evidence and an opportunity for the employee to tell his side of the story. *Mitchell v. Fankhauser*, 375 F.3d 477, 480 (6th Cir. 2004).

The county did not comply with this requirement. Fields first learned of his discharge in a letter he received on March 20, which told him he had been fired "effective as of 03/10/2010." R. 33-7 at 10. How could Fields obtain a hearing about a potential dismissal when he first learned about the dismissal ten days after the deed was done?

Nor may Captain Wilson's letter be fairly read as a notice of the county's intent to discharge Fields rather than as a notice that he had already been discharged. Dated March 15, 2010, the letter proclaims itself a "Notice of Termination effective as of 03/10/2010." *Id.* The letter's reference to a specific date of dismissal in the past does not square with the notion that it expressed an intent to terminate him in the future.

That does not end the matter, as Fields concedes. Even if *Captain Wilson* denied Fields a pre-discharge hearing, that does not mean the *county's procedures* violated due process. "What process is due depends upon whether the deprivation of property occurs pursuant to an established state procedure or results from a random, unauthorized act of a state employee." *Walsh v. Cuyahoga Cnty.*, 424 F.3d 510, 513 (6th Cir. 2005) (internal quotation marks omitted). If the deprivation occurs in a manner that defies state procedures, it is "difficult to conceive of how the State could provide a meaningful hearing before the deprivation takes place" because "the [S]tate cannot predict when the loss will occur." *Hudson v. Palmer*, 468 U.S. 517, 531 (1984) (internal quotation marks omitted). When a person is deprived of his property because state agents failed to follow a state procedure, here the county's applicable pre-deprivation procedures, due process is satisfied if a

means of challenging the deprivation afterwards remains available. *Collyer v. Darling*, 98 F.3d 211, 223 (6th Cir. 1996).

*Walsh* illustrates the point. An Ohio civil-service secretary sued the county that employed her, alleging it violated her due process rights when it fired her without providing a pre-discharge hearing. 424 F.3d at 512. Because the county fired her without the benefit of a pre-discharge hearing, Walsh alleged—and the district court agreed—that her due process rights had been violated. *Id.* at 512. Not so, we held. We noted that the county's established discharge procedures required "a written request for disciplinary action, a pre-disciplinary conference, and (if there was to be a discharge) an order of removal" before an employee could be fired. *Id.* at 514. Walsh's boss, however, fired her without following any of these procedures. It was thus "clear" to us that his action was random and unauthorized. *Id.* at 513. As such, Walsh had to show not only that she was deprived of a pre-discharge hearing, but also that she lacked adequate means to remedy her loss *post*-discharge. *Id.* at 514. She could not do so, and her procedural due process claim accordingly failed. *Id.*

So too here. As in *Walsh*, the jail procedures mandated a pre-discharge hearing. As in *Walsh*, Captain Wilson did not follow them. As in *Walsh*, Wilson's actions amounted to the sort of "random, unauthorized act" that the State could not predict. *See id.* at 513. And as in *Walsh*, this means that, because "the unauthorized failure of the state's agent to follow state procedure" caused

the firing, Fields must show that his post-discharge remedies were not adequate to compensate him for his loss.  *See Collyer*, 98 F.3d at 223.

Just as Walsh failed on this last score, so does Fields.  Fields had ample opportunity after he was fired to challenge the decision to dismiss him.  As Judge Rogers informed him, he could have appealed his discharge internally.  And Fields could (and did) file a state law action for wrongful discharge.  Both of these state law remedies had the potential to compensate Fields adequately for his loss or to obtain a reinstatement.

In sparse and spare briefing, Fields makes no sustained effort to argue that the post-discharge remedies available to him are inadequate.  He instead makes a series of arguments about why we should not care about the available post-discharge remedies at all.

He first claims that the post-discharge procedures do not suffice because they did not give him the chance to challenge his dismissal before it occurred.  But that does not come to grips with *Walsh* and similar cases, which hold that post-deprivation procedures may supply the due process answer to the unauthorized acts of a state employee.  His one cited case draws this precise line, distinguishing lawsuits in which the State took an adverse action against an employee in accordance with an established state procedure and those in which it did not.  *Mitchell*, 375 F.3d at 480–84.  That is consistent with *Walsh*, not in tension with it.

Fields' second retort is that the jail's post-discharge procedures do not suffice because he did not know about them. He says he had only a copy of the Taylor County Fiscal Court employee policy manual (which made no mention of a post-discharge hearing), not the jail employee handbook (which laid out the post-discharge appeal procedures in detail).

Taking the facts in the light most favorable to Fields, we assume he did not have the employee handbook that explained the post-discharge hearing process. But that makes no difference. For he did know that an internal appeal process existed. Judge Rogers told him as much when the two met about the notice of discharge. Fields simply declined to pursue the matter further.

Fields lastly argues that the jail's post-discharge procedures do not suffice because the jail never explained what they were and how they were adequate. Yet this argument flips the burden of proof. The jail does not have to show that its procedures are adequate; Fields has to show (or at this stage, create a genuine issue of fact about whether) they are not. *Collyer*, 98 F.3d at 223. His failure to do so is fatal to his due process claim.

For these reasons, we affirm.