NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0862n.06

No. 13-4073

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Nov 14, 2014*
DEBORAH S. HUNT, Clerk

PAUL LANE,                                )
                                          )
      Plaintiff – Appellant,              )
                                          )
                                          )   ON APPEAL FROM THE UNITED
v.                                        )   STATES DISTRICT COURT FOR THE
                                          )   SOUTHERN DISTRICT OF OHIO
CITY OF PICKERINGTON, et al.,             )
                                          )
      Defendants – Appellees.             )

BEFORE: SUHRHEINRICH, MOORE, and WHITE, Circuit Judges.

      **HELENE N. WHITE, Circuit Judge.** Paul Lane appeals the district court's grant of summary judgment to his former employer, the City of Pickerington, Ohio, and Individual Defendants Mitch O'Brien, Michael D. Taylor, and Linda Fersch, on his Fourteenth Amendment procedural due process claims brought under 42 U.S.C. § 1983 and his Ohio common-law defamation claim. Lane asserts he was denied due process of law when he was terminated without a constitutionally sufficient pre-termination hearing and denied a timely post-termination hearing, and asserts that Defendant Taylor published defamatory statements about him. We **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings.

**I.**

      The district court's opinion includes the following relevant facts:

      On August 30, 1999, Paul Lane began working for Pickerington as a construction inspection supervisor. In 2002, he was demoted to construction inspector. Beginning informally in November 2004 and officially in November 2005, Lane was an inspection administrator.

City manager Tim Hansley was Lane's boss. Although Lane would call Hansley a friend, they did not see each other often outside the work environment. Hansley was fired October 20, 2009. Shortly before he was fired, Hansley met with Lane and four other employees and told them that the mayor, Mitch O'Brien, wanted him to fire them. Lane believes Hansley was fired because he refused to fire them. Defendant Linda Fersch, Pickerington's personnel director, told the five not to worry, there were always rumors. Lane testified that Hansley was a good city manager and should not have been fired.

On October 22, 2009, police chief Michael Taylor's first day as acting city manager, he told Eric Vannatta to search Lane's computer. Taylor testified that he ordered Lane's computer searched because "there was a rumor that certain city employees Lane, Steve Carr, and George Parsley were removing erasing public documents from their computers." He could not recall who he heard the rumor from. He testified, "The rumor was Tim Hansley was saying these people . . . were removing public documents from their computers."

Vannatta suffered a stroke in 2010 that has eliminated his memory of many events over the 25 years before the stroke. He has little recollection of the search. He does not remember what he was searching for or how he used Recuva software during the search. He does recall burning a copy of pornographic images found on the computer to a CD. Almost all the images were from June 28 and 30, 2005, some four and one-half years before the search. Vannatta wrote a one-sentence October 23, 2009 memo to Taylor: "After using specialized software to retrieve images from Paul Lane's computer, it was noted that pornographic images were present on the hard drive."

Several weeks later, Vannatta used Recuva software to inspect George Parsley's computer. Lane's and Parsley's computers were the only two computers Vannatta ever inspected during his career with Pickerington.

Taylor testified that Vannatta told him he found no evidence any public documents were being erased from the searched computers. But Vannatta said he found around 30 pornographic images and "he found numerous sites where sites where--numerous listings on the computer where Paul went to look at pornography." Taylor further testified that Vannatta said there was a device on the computer that meant that what Lane was doing on the computer didn't get stored on the hard drive.

City policy prohibits viewing pornography on city computers. The city's internet guidelines prohibit using a computer to view pornographic, obscene, and sexually oriented images.

At approximately 8:20 a.m. on October 29, 2009, Taylor gave Lane a predisciplinary notice of an October 30 predisciplinary hearing. Lane was not

told that he might be terminated or that he had the right to be represented by an attorney at the hearing.

Taylor held the predisciplinary hearing which began at 10:00 a.m. on October 30, 2009. Personnel director Fersch was present, but did not participate.[1] Taylor asked Lane to explain the pornography found on his computer. Lane asked to see the images found on his computer, and Taylor refused to show them to him.[2] Lane testified that he told Taylor that he did not put pornography on the computer.[3] He further told Taylor that "if there are any images, the only way I am aware there could be any would be from checking my personal email. You open up something from a buddy and it's an off color joke and a picture of boobs . . . . I'm not aware of ever opening up any emails on my work computer."[4] Although his computer was password protected for login, Lane testified that anyone could access his computer during the work day because he was often out of his office and his computer was on from 6:00–6:30 a.m. to 5:00–6:00 p.m.

During the hearing, Taylor told Lane he had the option of resigning or being fired. Lane testified that Taylor told him that he could resign and receive a good recommendation. Lane asked to consider the offer over the weekend. On Monday, Lane told Taylor he would not resign. Taylor testified that he alone made the decision to fire Lane for looking at pornography on a work computer.

On October 30, 2009, probably after the predisciplinary hearing, Taylor asked then Sgt. Gene Delp to witness Eric Vannatta examine Lane's computer. Vannatta ran a program to search for deleted files and printed out a list of those files. Vannatta told Delp he was looking for pornography. Delp's recollection

---

[1] The district court noted: "Fersch testified that Taylor did not ask for her opinion and she did not volunteer an opinion about whether Lane should be fired. She did recommend that he talk to the city's employment counsel."

[2] The district court noted: "The first time Lane saw the images was after he made a public records request. Taylor agrees that he did not provide the images to Lane, but he further testified that Lane did not ask for them during the hearing. In contrast, Fersh testified that Lane asked to see the allegedly pornographic images and that Taylor said, 'I can't do that.'" For purposes of summary judgment, the district court assumed Lane asked to see the images.

[3] The district court noted: "Linda Fersch also testified that Lane denied the pornography was his. However, she believed Lane 'backpedaled when he later on said that he could have accidentally opened something.' Fersch testified that when first asked about pornography, Lane 'sort of laughed it off, like this is ridiculous, you know.' 'And later on in the conversation, though, he did say he might have accidentally opened an e-mail, but he couldn't control what people sent him . . . .'"

[4] The district court noted: "Taylor's testimony differs. He recalls Lane saying he pulled up his home email on his work computer 'and it would be on the site.' That is, he 'recalled pulling up the sites.' Taylor did testify that Lane denied going to a website to view pornography." For the purposes of summary judgment, the district court accepted Lane's testimony.

was that Vannatta found some cookies from pornography sites and history of internet visits to those sites. However, he did not include those findings in his report to Taylor, and that type of finding should have been included in the report. Vannatta found U2 software on Lane's computer, which could have been used to run a web browser and other software without using the computer's hard drive. A Google Chrome browser was also installed on the computer. That browser would permit the user to browse the internet anonymously without creating any entries on the internet history file.

Delp reported to Taylor that Vannatta found pornographic images that appeared to come from pornographic web sites. Taylor told him to write a summary report. Delp wrote a report either that day or the next. That report reads, in relevant part:

> Eric Vannatta provided computer tools which would recover deleted files, and showed me how he had used this software to recover appx. 30 files which indicated the computer had been used to access pornography over the internet. The files were still in the computer's hard drive, and were again located by the software provided by Eric Vannatta among 42,000 images which had been deleted from the computer. The pornography files were located in the Internet Explorer 5 temporary files and dated in 2005. The location of the files is consistent with files stored during the use of Internet Explorer. This is contrary to the claim from Mr. Lane that the files were delivered to his computer in an email. The history of Internet Explorer was set to save the internet browsing history for 999 days; however the only history on the computer was from the seven days prior to his pre-disciplinary meeting with Chief Taylor. I would conclude that Mr. Lane had cleaned the computer prior to examination by Eric and me.

> I also discovered that "U-3" software had been installed on the computer. This software is included on some thumb drives and allows for applications to be run directly from the thumb drive. These applications can include internet browsers, on-line chatting software, video players, etc. and can access the internet without leaving any trace on the computer hard drive. Mr. Lane also had Google Chrome installed on his computer. This program is an internet browser capable of running in "Incognito Mode." This mode allows the user to browse the internet without saving any history or temporary files to the computer's hard drive.

On November 5, 2009, Lane picked up from personnel director Fresch a letter terminating his employment. Lane believes he may have been fired because he was perceived to be "too close to Tim" Hansley. Plaintiff has proffered no evidence supporting that speculation.

On November 2, 2009, Taylor issued a letter terminating Lane that was [allegedly] based on false and/or misleading statements made by Fersch and others. On November 17, 2009, Lane submitted a request for hearing before the Personnel Appeals Board. Defendants notified plaintiff that he was not a classified employee and that the PAB did not have jurisdiction over his appeal. Lane was [allegedly] denied his right to due process because defendants failed to comply with the Section 9.03 of Pickerington City Ordinances. Defendants [allegedly] violated their clear duty to provide Lane with post-deprivation due process to conduct a hearing and to issue a determination on the merits of his appeal.

. . . .

Lane testified that he was defamed by a newspaper article that said he admitted possession of pornography and because "I was on 10TV."

On December 4, 2009, Taylor wrote a letter to the Ohio Bureau of Unemployment Compensation in response to a question asking for "additional information you might have significant to the separation." The letter stated, in relevant part:

> When Paul's computer was checked, it was determined there was 40,000 "hits" on the computer where he went to the Internet looking at various things and approximately 30 pictures were pornographic. When questioned, Paul admitted to looking at the pictures but stated that he was just checking his home E-mail at work, and when he opened the mail, it was determined to be pornographic. (30 different times?) If so, why not erase from the computer once determined? Also, he was using different software to access the sites (to avoid a record on the hard drive), which was not authorized. It was determined later this was not accurate, as the site had to be directly accessed, see enclosed print out of the internet site and photo.

> Additionally, in regards to sexual harassment with other employees. He made comments alleged about masturbation to a female employee, made an alleged sexual comment to another employee her breasts [sic], and was allegedly changing his pants in his office with the door opened and was witnessed by yet another female, and his comment was it was ok, I have boxer shorts on.

> Paul also made for somewhat of an uncomfortable, non-conducive work atmosphere. He allegedly would change into exercise clothes while at work, he pushed open the bathroom door of the men's room to witness other men going to the restroom. He allegedly invaded the female employees' personal space by walking right up to them or walking up behind them.

I interviewed several different employees and received the same comments about Paul Lane. He would leave the office, stay gone for hours at a time, not come in until late and not advise anyone. It was difficult to schedule appointments, as the secretary would not know where he was or when he would be in many times. I also determined no one really knew what he did for a job. I questioned 5-6 people and they couldn't advise what he really did. Although he was the "Building Administrator" he did very few if any administrative duties.

As for prior discipline, he received none due to the two past city managers would not administer discipline. Numerous complaints were taken to the two previous city managers and no action was taken, not even any documents in his file.

Upon initial complaints about Paul, I found them to be sustained. The female workers were on edge, and felt very uncomfortable working with him. One female employee was so concerned, she felt she should go outside and around the building through the back door to the restroom to avoid walking past his office.

After talking to numerous people, I determined there was a atmosphere created by Paul that was non conducive to a good working environment. Changing clothes in an office that was witnessed by female employees, making sexual comments to a female employee, invading personal space, making comments about a female's breasts to her, all this hardly constitutes a health [sic] work environment. I consider the city fortunate a sexual harassment suit was not imposed by the female workers of the city due to lack of action on two prior city managers' actions.

The Notice of Predisciplinary Conference states that the alleged offense was "Violation of Technology, Section 2; unacceptable and personal use," and the summary of charges states "Prohibited use of the internet viewing and retaining of pornographic materials on city computer. Misuse of city property in an inappropriate and offensive manner."

On December 1, 2009, Phillip Hartmann, the Law Director of the City of Pickerington, responded to Lane's request for a hearing before the Personnel Appeals Board with a letter stating that Lane was an unclassified employee and the Personnel Appeals Board had no

jurisdiction to hear his appeal.[5]  In 2010, Lane filed for a writ of mandamus with the Ohio Fifth District Court of Appeals demanding that Defendants be ordered to issue a determination on Lane's request for a hearing and a final appealable order.  It was denied.  On October 27, 2011, the Ohio Supreme Court ruled that the letter issued by the City of Pickerington Law Director did not provide an adequate remedy at law for Lane because the letter was not a final, appealable order from or on behalf of the City of Pickerington Personnel Appeals Board.  On January 27, 2012, the Fifth District Court of Appeals issued a mandamus directing the Personnel Appeals Board to issue a determination on Lane's request for a hearing.  The City's Personnel Appeals Board conducted a hearing to determine whether Lane was a classified employee at the time of his termination on May 10, 2012.  On May 29, 2012, the Board determined that the City failed to demonstrate that Lane was unclassified.  On November 29, 2012, Lane was given a hearing before the Board on the merits of his termination.  The Board upheld the finding of a violation of city policy, reversed the decision to terminate Lane's employment, modified the termination to a 30-day suspension, and ordered that Lane be reinstated to a non-supervisory position for which he was otherwise qualified.  The Board's order is currently on appeal to the Fairfield County Court of Common Pleas.[6]

---

[5] The letter states:

> Pursuant to Charter Section 9.02 and 9.03, the PAB rules and the Codified Ordinances of the City, the position you previously held as the Director of the Building Department is an exempt position and therefore considered unclassified. The PAB does not have jurisdiction to hear an appeal from an unclassified employee regarding dismissal.  Therefore, the City respectfully declines your request for a hearing before the PAB.

[6] At oral argument, Defendants explained that if they are not successful in their appeal, Lane will be entitled to back pay.  If back pay is not provided, Lane must rely on an internal process.

The district court granted summary judgment in favor of the City of Pickerington and the Individual Defendants.

## II.

This court reviews de novo a district court's decision to grant summary judgment. *Rudisill v. Ford Motor Co.*, 709 F.3d 595, 600 (6th Cir. 2013). Summary judgment is appropriate where the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Mitchell v. Fankhauser*, 375 F.3d 477, 479 (6th Cir. 2004). In considering a motion for summary judgment, the district court must construe all reasonable inferences in favor of the nonmoving party. *Mitchell*, 375 F.3d at 479 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Rudisill*, 709 F.3d at 601 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)) (internal quotation marks omitted); *Mitchell*, 375 F.3d at 479.

## III.

### A.

Lane argues the district court erred in granting summary judgment on his claims of pre- and post-deprivation due process. The district court held that Lane failed to plead pre-deprivation due process allegations in his complaint, finding that the facts in Lane's complaint address only post-deprivation due process. We disagree.

Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007). Lane's complaint provides a factual context for a due process claim by asserting multiple deprivations of due process, including allegations that he had a constitutionally protected property interest in his employment, Defendants knew the charges against him were insufficient to support his termination, and Defendants failed to follow "principles of notice." Even assuming Lane's complaint is ambiguous, Lane's pre-deprivation due process claim fits within the scope of his Fourteenth Amendment due process claim. Depositions of Lane, Taylor, and Fersch addressed the pre-deprivation hearing, and Defendants' requests for admissions, as well as Lane's responses to those requests, addressed pre-deprivation due process. Thus "all parties were aware, well before the summary judgment stage," that Lane's complaint encompassed a pre-deprivation due process claim. *Harris v. Bornhorst*, 513 F.3d 503, 517 (6th Cir. 2008). Accordingly, we consider Lane's pre-deprivation due process claim, as well as his post-deprivation claim.

**B.**

To succeed on his pre-deprivation and post-deprivation due process claims, Lane must show that he has a liberty or property interest in his job and that Defendants failed to provide sufficient process in depriving him of that interest. *Fields v. Benningfield*, 544 F. App'x 626, 628 (6th Cir. 2013) (citing *Sickles v. Campbell Cnty.*, 501 F.3d 726, 730 (6th Cir. 2007)). There is no dispute that Lane had a property interest in his job. The question then is what process was due. We examine first Lane's pre-deprivation claim.

**1.**

"In the context of employment rights, the Supreme Court has explained that 'the root requirement of the Due Process [C]lause' is 'that an individual be given the opportunity for a hearing *before* he is deprived of any significant property interest.'" *Mitchell*, 375 F.3d at 480

(emphasis in original) (quoting *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 542 (1985)).

This court has explained:

> Pre-termination hearings "need not be elaborate." [*Loudermill*, 470 U.S. at 545]. "The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." [*Id.* at 546]. This "initial check against mistaken decisions" is all that is necessary where an employee is provided with a full post-termination hearing. [*Id.* at 545]; *Brickner v. Voinovich*, 97 F.2d 235, 237 (6th Cir. 1992) ("The Supreme Court has held that, depending on the circumstances, a pre-termination hearing, although necessary, may not need to be elaborate, as long as the plaintiff is entitled to a full hearing with the possibility of judicial review at the post-termination stage."). Post-termination hearings, on the other hand, "serve to ferret out bias, pretext, deception and corruption by the employer in discharging the employee." *Duchesne v. Williams*, 849 F.2d 1004, 1008 (6th Cir. 1988).

*Mitchell*, 375 F.3d at 480.

Lane was denied adequate pre-deprivation due process. Under *Loudermill*, a pre-deprivation hearing must include an explanation of the employer's evidence. Lane was denied the opportunity to see the photographs he was accused of viewing and retaining, depriving him of a "meaningful opportunity to tell his side of the story." *Loudermill*, 470 U.S. at 546.[7]

---

[7] Citing *Collyer v. Darling*, 98 F.3d 211, 224 (6th Cir. 1997), the dissent reasons "Taylor's general statement that pornography was found on Lane's computer . . . provided Lane with a sufficient explanation of the evidence against him and an opportunity to respond." Op. at 2. We disagree. Although *Collyer* concluded pre-deprivation due process did not require Collyer's employer to furnish Dr. Lingl's report, the court concluded Collyer received adequate process because Collyer was informed that "he was being 'suspended' because the doctor determined him unfit due to a mental condition." 98 F.3d at 224. *Collyer* is distinguishable. Although the prediscipinary conference notice charged Lane with viewing and retaining pornographic material on his city computer, we find the notice inadequate because Lane allegedly viewed the pornographic images on his city computer approximately four and one-half years prior. Absent an opportunity to view the stale evidence, Lane could not have had a meaningful opportunity to respond to the allegation. And unlike in *Collyer*, the notice did not state the potential discipline Lane could receive. Finally, Collyer received more detailed information of Dr. Lingl's report throughout several pre-deprivation conferences. Lane did not.

Additionally, a jury could find that Lane was not given notice of all the charges against him.[8]

Lane was notified of the charge that he "viewed and retained" offensive images, but he was not

notified of any sexual-harassment or hostile-work-environment charges, even though Taylor

stated in a termination memorandum to the State of Ohio that Lane "created a hostile working

environment that makes the women feel uneasy when Paul is present," and stated in a letter to

the Ohio Bureau of Unemployment Compensation that, "in regards to sexual harassment," Lane

made comments about masturbation to a female employee, made an alleged sexual comment to

another employee about her breasts, was allegedly changing his pants in his office with the door

open, and allegedly invaded female employees' personal spaces by walking right up to them or

behind them.[9] The lack of meaningful notice and an opportunity to be heard is evident given that

Taylor based his decision to terminate Lane in part on Lane's "failure to present any evidence to

the contrary at the [pre-termination] hearing."

Our conclusion that Lane was not provided with a constitutionally adequate pre-

termination hearing is unaffected by the post-termination process Lane received. *See*

*Loudermill*, 470 U.S. at 547–48 (holding that plaintiffs failed to state a post-deprivation due

process claim, but concluding district court erred in dismissing pre-deprivation claim where

plaintiffs alleged they did not have a chance to respond to charges against them in a pre-

---

[8] The dissent also concludes Lane received adequate notice of the sexual harassment charges. Because Pickerington argues in its brief, citing Taylor's testimony, that the prediscipentary conference "dealt with the technology policy violations, not the sexual harassment allegations," summary judgment is inappropriate. Pickerington Br. 23.

[9] Taylor testified that he was the sole decision-maker and based his decision solely on the pornography offense. Taylor further testified that he did not raise any sexual harassment charge with Lane during Lane's pre-deprivation hearing. In contrast, Lane testified that Taylor did state at the pre-disciplinary hearing that "there's also been allegations of sexual harassment in your workplace," mentioning Lane's conversation about masturbation, which at the time Lane did not recall. Lane testified that "[a]t that point, I put my hands up and said, 'I don't even talk to those girls,'" and told Taylor that allegations of sexual harassment needed to be on the pre-disciplinary notice.

termination hearing); *McDaniel v. Princeton City Sch. Dist. Bd. of Educ.*, 45 F. App'x 354, 359 (6th Cir. 2002) (affirming district court's finding that defendants deprived plaintiff of due process when they terminated her employment without providing her with complete notice and an opportunity to be heard).

The parties dispute the application of *Parratt v. Taylor*, 451 U.S. 527 (1981), which established the rule that where the alleged due process violation is the result of a "random and unauthorized act" of a state employee, an adequate state post-deprivation remedy is all the process that is due. *Id.* at 541, 543–44. In *Parratt*, a Nebraska prisoner brought a § 1983 clam against prison officials, alleging that the prison deprived him of due process by negligently losing his mail containing hobby materials. *Id.* at 543. Pre-deprivation due process was not at issue in *Parratt* because the property loss was due to negligence, "did not occur as a result of some established state procedure," "the State [could not] predict precisely when the loss [would] occur," and "in most cases, it is not only impracticable, but impossible, to provide a meaningful hearing before deprivation." *Id.* at 541.

In the subsequent case of *Logan v. Zimmerman Brush Co.*, 455 U.S. 422 (1982), the Court emphasized that *Parratt* dealt with a deprivation resulting from the "random, unauthorized act" of a state employee, which is distinct from a deprivation resulting from an established state procedure. *Id.* at 435–36. As the Supreme Court has observed, the "controlling inquiry" in determining the applicability of *Parratt* "is solely whether the state is in a position to provide for predeprivation process." *Hudson v. Palmer*, 468 U.S. 517, 534 (1984).

This court has applied *Parratt*'s rule inconsistently in two "parallel but contradictory" lines of authority. *Mitchell*, 375 F.3d at 482. We conclude, as we did in *Mitchell*, *see id.* at 484, that *Parratt* has no application here because Lane was not deprived of his constitutionally

protected property interest due to a random or unauthorized act; Defendants had the opportunity to provide Lane pre-deprivation process pursuant to an established procedure—and indeed did provide a pre-termination hearing, albeit a constitutionally inadequate one.

**2.**

Lane asserts that his post-deprivation hearing violated due process as well because it was untimely. "The Due Process Clause requires provision of a hearing at a meaningful time." *Loudermill*, 470 U.S. at 547 (citing *Armstrong v. Manzo*, 380 U.S. 545, 5552 (1965)). The "timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved." *Logan*, 455 U.S. at 434. No fixed rule governs the time in which a post-termination appeal must be decided. Although "[a]t some point, a delay in the post-termination hearing would become a constitutional violation," *id.*, "the significance of such a delay cannot be evaluated in a vacuum," *FDIC v. Mallen*, 486 U.S. 230, 242 (1988). The Court has held:

> In determining how long a delay is justified in affording a post-suspension hearing and decision, it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.

*Id.* (citing *Logan*, 455 U.S. at 434; *Mathews v. Eldridge*, 424 U.S. 319, 334–35 (1976)).

The parties do not dispute that a public employee's continued employment is an important private interest. Defendants have offered ongoing state-court proceedings as justification for their delay, and Lane correctly argues that the City was likely mistaken in its belief that he was not entitled to a post-deprivation hearing.

Lane filed a complaint for a writ of mandamus in the Ohio Fifth District Court of Appeals in 2010 to compel the City of Pickerington and the Personnel Appeals Board to conduct a

hearing on the charges against him and provide the opportunity to obtain a final appealable order. The court of appeals granted the City's motion for summary judgment. On October 27, 2011, the Ohio Supreme Court held that the court of appeals erred in denying the writ because Lane did not have an adequate remedy by way of administrative appeal in the absence of a final, appealable order from the Personnel Appeals Board, and remanded to the court of appeals to determine whether Lane could establish entitlement to the writ. On January 27, 2012, the court of appeals issued the writ ordering the Personnel Appeals Board to issue an order addressing Lane's hearing request. Following that mandate, the Board determined that Lane was entitled to a hearing on the merits since it found that he was a classified employee. Lane does not argue that Defendants unconstitutionally delayed his post-deprivation process following the issuance of the writ. Further, defendants were entitled to rely on the Ohio Fifth District Court of Appeals' initial denial of relief. The delay was not unreasonably prolonged because Lane's right to a post-deprivation hearing was not determined until the Ohio Supreme Court and the Fifth District Court of Appeals on remand issued their opinions, two years after the termination. *See Loudermill*, 470 U.S. at 547 (holding that nine-month adjudication was not unconstitutionally lengthy where *Loudermill* offered no indication that his wait was unreasonably prolonged).

This would be a different case if we were dealing with an instance in which the delay was not occasioned by pending litigation. Although a plaintiff need not demonstrate the inadequacy of unexhausted state processes in order to bring an action under § 1983 where a deprivation is caused by established state procedure, *see Mitchell*, 375 F.3d at 481–84; *Rodgers v. 36th Dist. Court*, 529 F. App'x 642, 649 (6th Cir. 2013), Ohio law provided Lane with the right to request a writ of mandamus. When he did so, relief was granted in his favor, and the City's Personnel Appeals Board addressed his entitlement to a hearing, reversed the City, and granted relief in the

form of reinstatement. The process Lane received was not simply delayed; it was ongoing. *See Collyer v. Darling*, 98 F.3d 211, 227 (6th Cir. 1996) (holding that state action in mandamus compelling payment of two years of back pay was an adequate remedy at law); *Cronin v. Town of Amesbury*, 81 F.3d 257, 260–61 (1st Cir. 1996) (holding that almost three-year delay caused by investigations and public hearings did not violate due process where the possibility of reinstatement with back pay remained available) (citing *Alton Land Trust v. Town of Alton*, 745 F.2d 730, 732 (1st Cir. 1984) (two and one-half year litigation was not inordinate delay where plaintiffs' contentions were heard and relief was ordered in their favor)). Accordingly, we agree with the district court that the delay in receiving a post-termination hearing in this case did not violate Lane's constitutional rights.

## C.

The City of Pickerington argues that notwithstanding any due process deprivation, we must affirm the grant of summary judgment in its favor because *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), precludes municipal respondeat superior liability.[10] However, a municipality may be liable for the actions of its employees or agents under § 1983 where the "acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. Lane contends municipal liability is proper under *Monell* because the City delegated its responsibility for pre-disciplinary due process to Taylor, thus making Taylor a final decision maker on the issue, and because the City failed to train Taylor. The district court did not reach the issue because it found no constitutional violation. Summary judgment for the City based on *Monell* is inappropriate where Taylor, the City Manager, appears to have been the final decision maker when dealing with city employees.

---

[10] The City raised *Monell* in response to Lane's motion for summary judgment. It did not assert it as a ground for granting its own motion for summary judgment.

**D.**

The Individual Defendants O'Brien, Taylor, and Fersch argue that they are entitled to qualified immunity, which protects government officials performing discretionary functions from civil liability under § 1983 unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Their sole joint argument is that they infringed no clearly established constitutional right because no reasonable official would have known that terminating Lane, after notice, for viewing pornography was impermissible. This argument conflates the clearly established procedural right at issue with the reason for the termination, and ignores the patent inadequacy of the notice. Although the Constitution does not require an "elaborate" pre-deprivation hearing, it required Defendants to provide Lane a "meaningful opportunity to tell his side of the story" before he was fired. *Loudermill*, 470 U.S. at 545–46. A reasonable official would have known that Lane was entitled to view the evidence against him. Additionally, a jury could find that Lane was terminated based on allegations not contained in the notice of the pre-disciplinary conference; a reasonable official would thus have known the notice was constitutionally inadequate. Thus, we cannot say that Individual Defendants are entitled to dismissal based on qualified immunity. *See Rodgers*, 529 F. App'x at 653.

**E.**

Lane has failed to allege a sufficient Ohio common-law defamation claim. First, the district court correctly found that the only defamation allegation pleaded in Lane's complaint was based on false and misleading information in Taylor's letter terminating Lane's employment. Even assuming other allegedly defamatory statements made by Taylor are properly before this court, the claim is barred by qualified privilege.

"A qualified privilege may be defeated only if a claimant proves with convincing clarity that the publisher acted with actual malice." *Jackson v. City of Columbus*, 117 Ohio St. 3d 328, 331 (2008). Actual malice, in the context of a defamation action, constitutes an "abuse of privilege." *Id*. (citing *A & B–Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St. 3d 1, 11 (1995)). In a qualified privilege case, "actual malice" is defined as acting with knowledge that the statements are false or acting with reckless disregard as to their truth or falsity. *Id*. The phrase "reckless disregard" applies when the publisher of defamatory statements acts with "a high degree of awareness of their probable falsity" or when the publisher in fact entertained serious doubts as to the truth of his publication. *Id*. (quoting *Garrison v. Louisiana*, 379 U.S. 64, 74 (1968)); *see also Green v. Fidelity Invs.*, 374 F. App'x 573, 578 (6th Cir. 2010) ("To demonstrate actual malice, [Lane] would need to show that [Taylor] made the statements with knowledge that they were false or with reckless disregard of whether they were false or not." (internal quotation marks omitted)).

Lane has failed to show that Taylor's statements were false or made with reckless disregard of their falsity. First, Taylor's statement that Lane admitted to looking at pornography on city computers was substantiated by Lane's deposition testimony that "if there are any images, the only way I am aware that there could be any would be from checking my personal email. You open up something from a buddy and it's an off-color joke and a picture of boobs . . . . I'm not aware of ever opening up any emails on my work computer." In an investigation summary from Sgt. Matt Delp and in a memorandum from Eric Vannatta, who were charged with searching Lane's computer, the material on Lane's computer was described as pornographic, and there is no dispute that there were approximately thirty pictures on Lane's computer that Taylor viewed as pornographic. Moreover, the search of Lane's computer

revealed that the "pornographic" images on the hard drive had been accessed by going to a website, not via email, and that software had been installed on the computer to allow Internet browsing without leaving any trace on the computer hard drive.

Taylor's statement that Lane created a hostile working environment was substantiated by Lane's own testimony, admitting that he participated in conversations about naming women's breasts and telling a masturbation joke, and that he told a woman wearing a shear blouse that he could see her nipples. Further, Taylor received four statements from female employees complaining of sexual harassment by Lane. Among these was a statement from a woman saying that she observed a copy of a Playboy article on sex and sexuality left on the copier that was later picked up by Lane. Taylor testified that this is what he was referring to when he stated that Lane's viewing of pornography created a hostile work environment.

Finally, the district court correctly noted that a newspaper article written by Nate Ellis states: "Taylor declined to elaborate on the alleged material but disagreed with Lane's assertions," and only attributes one statement to Taylor: "Clearly, it was pornographic." Lane has failed to show that Taylor made the allegedly defamatory statements with "a high degree of awareness of their probable falsity" or entertained serious doubts as to the truth of his publication. Thus, the qualified privilege applies.

**IV.**

We **AFFIRM** the district court's grant of summary judgment to Defendants on Lane's post-deprivation due process claim and his Ohio defamation claim, **REVERSE** the award of summary judgment to Defendants on Lane's pre-termination due process claim, and **REMAND** for further proceedings consistent with this opinion.

**SUHRHEINRICH**, Circuit Judge, dissenting.

I concur in the majority's dismissal of the post-deprivation and defamation claims. However, because I believe Lane was afforded sufficient process prior to his termination, I would affirm the entire judgment entered in favor of the defendants and, therefore, I dissent.

The majority provides two reasons to support its conclusion that Lane was denied pre-deprivation due process. First, the majority claims that Lane was deprived of an explanation of his employer's evidence and of a meaningful opportunity to tell his side of the story because "Lane was denied the opportunity to see the photographs he was accused of viewing and retaining." Maj. Op. at 11.

In the employment context, pre-deprivation due process requires simply "an explanation of the employer's evidence," as well as "an opportunity to present [the employee's] side of the story." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). Lane got that. At Lane's predisciplinary conference, which constituted his pre-termination hearing, Taylor asked Lane to explain the pornography found on his work computer. Thus, Taylor explained the evidence against Lane and gave him an opportunity to tell his side of the story. Lane did so, stating that he was unaware of any pornography on his computer, but if there was pornography, it possibly entered Lane's computer when he checked personal emails sent from his friends.

The majority finds error because Taylor refused Lane's request to view the images allegedly found on his computer. But *Loudermill* does not require production of evidence. *Collyer v. Darling*, 98 F.3d 211, 224 (6th Cir. 1997). *Collyer* is instructive on this point. Bruce Collyer worked as a Therapeutic Program Worker ("TPW") for the Broadway Development Clinic ("BDC"), an institution operated by the Ohio Department of Mental Retardation and Developmental Disabilities. *Id.* at 216. Collyer was reassigned to the position of doorman after

he experienced sudden outbursts of anger, prompting the BDC to seek a psychiatric evaluation of Collyer. *Id.* at 216-17. Collyer was evaluated by Dr. Friedrich Lingl, who concluded that Collyer suffered from a paranoid personality disorder that prevented him from functioning effectively as a TPW. *Id.* at 217. Collyer subsequently received a letter indicating that the BDC planned to place him on leave because of Dr. Lingl's conclusions. *Id.* at 224. The BDC then issued a notice of personal conference, during which Collyer was informed that Dr. Lingl determined Collyer was unfit for work. *Id.* After the conference, the BDC placed Collyer on "unpaid leave." *Id.* Collyer brought suit for the violation of his due process rights, alleging insufficient pre-deprivation process "because he was denied a copy of Dr. Lingl's report." *Id.* The Sixth Circuit disagreed:

> As regards Dr. Lingl's report, *Loudermill* and its progeny do not require any more than adequate *explanation of the reasons* for the employer's action. Thus, it was sufficient for the BDC to inform Collyer that he was being "suspended" because the doctor determined him unfit due to a mental condition.

*Id.* (emphasis added).

Just as a general description of Dr. Lingl's finding provided Collyer with a sufficient explanation of the evidence against him and an opportunity to respond, Taylor's general statement that pornography was found on Lane's computer similarly provided Lane with a sufficient explanation of the evidence against him and an opportunity to respond.[1] In short, Lane received adequate pre-deprivation due process.

---

[1] The majority attempts to distinguish *Collyer*, arguing that Lane's situation is different because (1) the evidence against Lane was "stale," (2) the written notice provided to Lane did not state the potential discipline he could receive, and (3) the plaintiff-appellant in *Collyer* received more detailed information about the evidence against him. Maj. Op. at 10 n.7. This reasoning is problematic. First, the evidence against Lane could not have become "stale" until after its discovery. Although Lane's improper acts were older, they remained unknown to the City for over four years. Once the pornography was discovered, however, the City acted on that evidence within seven days. The majority's second and third propositions ignore the ruling of

No. 13-4073
*Lane v. City of Pickerington, et al.*

The majority also reasons that Lane's pre-deprivation due process was deficient because Lane "was not notified of any sexual-harassment or hostile-work-environment charges." Maj. Op. at 11. The "Notice of Predisciplinary Conference" Lane received listed the charges as (1) prohibited use of the internet to view and retain pornography, and (2) misuse of city property in an inappropriate and offensive manner. The majority, however, focuses on written statements Taylor made in a termination memorandum to the State of Ohio and a letter to the Ohio Bureau of Employment Compensation after the predisciplinary conference. Those statements suggested that Taylor terminated Lane's employment because Lane's sexually harassing conduct created a hostile work environment. Maj. Op. at 11.

In addition to an explanation of the employer's evidence and an opportunity for the employee to present his or her side of the story, pre-deprivation due process requires "*oral or written* notice of the charges against [the employee]." *Loudermill*, 470 U.S. at 546 (emphasis added). This court has repeatedly held that oral notice can be informal, and it can be provided during the pre-deprivation hearing itself. *See, e.g.*, *Mitchell v. Fankhauser*, 375 F.3d 477, 481 (6th Cir. 2004); *Morrison v. Warren*, 375 F.3d 468, 474 (6th Cir. 2004).

Although Lane's written "Notice of Predisciplinary Conference" listed only the charges related to viewing pornography on a work computer, during Lane's predisciplinary conference,

_____

*Loudermill* and its application to a unique set of facts in *Collyer*. *Loudermill* itself emphasized that the pre-termination hearing "need not be elaborate" and that "something less than a full evidentiary hearing is sufficient prior to adverse administrative action." 470 U.S. at 545 (internal quotations omitted). And *Collyer* echoed this plain pronouncement of the Supreme Court, stating that "*Loudermill* and its progeny do not require any more than adequate explanation of the reasons for the employer's action." 98 F.3d at 224. Thus, *Collyer* does not mention, and the majority neglects to cite other legal authority requiring, that the written notice state the potential discipline available or that the description of evidence meet a certain level of detail in order to satisfy due process. Thus, because Taylor told Lane that he discovered pornography on Lane's work computer, Lane received an adequate explanation of the disciplinary action against him. No further action on Taylor's part was needed because his actions satisfied the due process requirements of *Loudermill* and *Collyer*.

-21-

Taylor further explained, "Paul, there's also been allegations of sexual harassment in your workplace," and Taylor specifically referenced an alleged conversation about masturbation that Lane had with a female employee. Lane responded to those charges, telling Taylor that he did not even speak with those employees alleging sexual harassment and that he had no knowledge about a conversation involving masturbation. In other words, Taylor gave Lane oral notice of the sexual harassment allegations at the pre-deprivation hearing, and Lane utilized the conference as an opportunity to respond to those allegations.

Thus, Lane's pre-deprivation hearing easily satisfied *Loudermill* and the law of the Sixth Circuit. A comparison with two cases from this circuit confirms this conclusion. In *Mitchell v. Fankhauser*, this court held that oral communication alone is sufficient for notice. LeCarthy Mitchell, the head custodian of a public high school, was accused of stealing school property. *Mitchell*, 375 F.3d at 478. On August 20, 2001, Mitchell attended a meeting with the superintendent and other school officials. *Id.* Those officials informed Mitchell of allegations by third parties that Mitchell helped another custodian steal school property. *Id.* After a few days, the superintendent terminated Mitchell's employment for that alleged theft. *Id.* at 479. Mitchell brought suit, asserting that his due process rights were violated because Mitchell's employer failed to provide an evidentiary due process hearing regarding the reasons for his termination. *Id.* Addressing the issue of pre-deprivation due process, the Sixth Circuit determined that Mitchell's employer provided adequate process because "[t]he August 20, 2001 meeting that Mitchell had with [the superintendent] and the other [school] officials provided Mitchell with *oral notice* of the charges against him and an opportunity to present his side of the story." *Id.* at 481 (emphasis added).

The Sixth Circuit reached a similar conclusion in *Morrison v. Warren*. Deputy Sherriff Timothy Morrison was accused of domestic abuse by his wife, who obtained a civil protection order against Morrison. *Morrison*, 375 F.3d at 470. The order prohibited Morrison from carrying a deadly weapon for up to five years, which interfered with Morrison's primary job requirement. *Id.* Human Relations Officer Yamini Adkins subsequently contacted Morrison to inform him that she was aware of the order, that she was placing Morrison on administrative leave, and that Morrison had to report to a pre-discharge hearing the following day. *Id.* At the hearing, Adkins explained the employment consequences of the civil protection order (i.e. termination) and notified Morrison of a pre-discharge conference the following day. *Id.* at 470-71. At the end of that conference the next day, Morrison was discharged. *Id.* at 471. Morrison claimed that his employer "violated his procedural due process right to a meaningful pre-termination hearing by neglecting to provide written notice of the specific charges against him." *Id.* at 474. The Sixth Circuit disagreed, holding that the "oral notice provided by Adkins to Morrison—that he would be discharged as a result of his inability to carry a gun due to the Civil Protection Order—was sufficient." *Id.* Therefore, just as oral notice during the pre-deprivation hearing alone was sufficient for due process in *Mitchell* and *Morrison*, it is similarly sufficient in Lane's case.[2]

---

[2] The majority holds that summary judgment was inappropriate on the issue of whether Lane received notice of those sexual harassment allegations because in its brief Pickerington states that the predisciplinary conference dealt with the technology policy violations, not the sexual harassment allegations. Maj. Op. at 11 n.8. The fact that the predisciplinary conference "dealt with" the technology policy violations does not imply that the sexual harassment allegations were never mentioned. Indeed, in his deposition, Lane stated that Taylor said, "Paul [Lane], there's also been allegations of sexual harassment in your workplace," and "mentioned something about [how Lane] had a conversation about masturbation or masturbating with one of the [female employees]." Thus, summary judgment was appropriate because Lane received oral notice of those charges.

Furthermore, nothing in the record suggests that Lane was actually terminated because of those sexual harassment allegations. Taylor mentioned the sexual harassment allegations once at the hearing, suggesting that Taylor noted those allegations merely in order to impeach Lane's credibility. Similarly, in a termination memorandum to the City of Pickerington's Personnel Director, Taylor stated that Lane "created a hostile working environment that makes women feel uneasy when [Lane] is present." But Taylor also wrote that the disciplinary "meeting was to allow [Lane] to provide testimony to the charge of violating the City Policy on Technology," and he stated that this violation of city policy created the hostile working environment. Taylor again noted the sexual harassment allegations in a letter to the Ohio Department of Job and Family Services detailing the circumstances of Lane's departure. Yet, Taylor did not state that he terminated Lane because Lane violated the city policy banning sexual harassment. *Id.* Indeed, the only document that definitively stated the basis for Lane's removal was the November 5, 2009 letter Taylor wrote notifying Lane of his termination. The letter expressly cited Lane's violation of the Pickerington Personnel Policy and Procedures Manual provision prohibiting use of the internet to view pornography as the basis of Taylor's decision. Consequently, the only disciplinary charge expressly relied on in the record is Lane's misuse of technology to view pornography. This misconduct—viewing pornography during work hours, on work equipment—was more than sufficient to justify Lane's dismissal.

In short, because I believe that Lane received adequate pre-deprivation due process in accordance with *Loudermill* and the law of this circuit, I dissent.